WAYNE MARTIN, appellant, v. SKELLY OIL COMPANY, appellee.

No. 49972.

(Reported in 106 N.W.2d 95)

 

NOVEMBER 15, 1960.

Davis, Huebner, Johnson, Herring & Burt, of Des Moines, for appellant.

Ralph L. Cunnyngham, of Tulsa, Oklahoma, and Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee.

PETERSON, J.—This is a workmen's compensation arbitration action brought by the claimant, Wayne Martin, to recover for injuries sustained while in the employ, as an investigator, of defendant, Skelly Oil Company. On October 10, 1956, upon request from his superior in the company, he was traveling from Pittsburg, Kansas, to Wisconsin to investigate a problem which had arisen in that state.

When he was about four miles south of Indianola, in Warren County, another car drove into his path on the main highway and it became necessary for him to quickly change his

course. He lost control of his car when it left the road, and he was thrown out of the car. He was in a hospital in Des Moines for four days and was then taken to a hospital in his home city of Tulsa where he was confined for four or five weeks.

On July 2, 1957, claimant filed application for arbitration with the Industrial Commissioner of Iowa. The hearing started on February 11, 1958. Upon its conclusion the deputy commissioner filed his arbitration decision holding that claimant had bodily injury to the extent of 65% of permanent disability.

From this decision defendant appealed to the commissioner for review as provided by statute. Upon review the commissioner established the total bodily injury on the basis of 100% disability.

From this decision of the commissioner defendant appealed to the district court. Upon hearing the district court reversed the commissioner and placed the total bodily injury on the basis as fixed by the deputy commissioner of 65% of permanent disability.

From this decision of the district court claimant has appealed to this court.

I. In this court our authority stems from section 86.30, 1958 Code, and from the following pertinent parts of the section:

"Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds: [paragraphs 1 and 2 not pertinent].

"3. If the facts found by the commissioner do not support the order or decree.

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

Four doctors testified on behalf of claimant and one on behalf of defendant. Two other doctors treated claimant after he was returned to Tulsa, but they did not testify. On the broad basis of total bodily disability there was not serious medical controversy. Dr. John E. McDonald testified by deposition. He had examined claimant April 26, 1957. Dr. Averill Stowell also testified by deposition. His examination was made November 5, 1957. Drs. A. L. Clemons, John T. Bakody and

·F. Eberle Thornton examined claimant in Des Moines immediately prior to the hearing of the case before the deputy commissioner on February 11, 1958. They are all highly qualified and able orthopedic physicians or surgeons.

At the time of the hearing claimant was not under the care of any doctor. Prior to the examinations in Des Moines the last doctor he had seen was Doctor McDonald in Tulsa in November of 1957. The last time he had worn a brace was in the first week of September 1957.

II. Recital of the facts is necessary in order to assist in arriving at claimant's present industrial capacity. Claimant received a superior education, his experience was extensive, and prior to his injury he had a unique and colorful career.

At the time of the hearing he was 43 years of age. He was born in Oklahoma and was a graduate of Tulsa Oklahoma Central High School. His scholastic ability was rated above average. He is a graduate of the University of Oklahoma.

In high school he engaged in wrestling and also played football for four years. In the University he was on the wrestling team and three times was National Intercollegiate Champion. He graduated from the University with a Bachelor of Science degree. After leaving the University he continued his wrestling career and held the national title in the welter and middleweight classes. He made the Olympic team, but wrenched his knee immediately before date of leaving and did not get to participate.

After graduation from the University he taught in high school and coached for three years. Thereafter he moved to California and coached wrestling at the Hollywood Athletic Club. He then worked for five years at Twentieth Century Fox as a stunt man.

Thereafter he formed an acrobatic tumble show and demonstrated hand-to-hand combat. He was rejected by the Army for service in World War II on account of an arm injury, but because of his ability in hand-to-hand combat with knife, gun and club he taught this course in an Army Regiment. He published a book on such combat, of which ten thousand copies were sold.

Starting in 1947 he engaged in professional wrestling and had matches all over the country. He became the world champion in his class.

By this time he had married and had a family of two boys and a girl. He was therefore desirous of spending more time at home with his family. He joined the Tulsa Police Department. Within a comparatively short time he became inspector for the department. After some years he resigned and became the guard in the First National Bank Building, having charge of a twenty-one story building in Tulsa.

In 1955 he resigned his bank position and accepted employment with Skelly Oil Company as a special agent. His work was investigation of automobile accidents, theft, embezzlement, burglary, and fires in twenty-eight states in the center of the country.

■ III. Normally, the commissioner's findings when supported by competent evidence, or when there is a conflict in admitted evidence, or reasonable minds may differ on the inferences fairly to be drawn therefrom, the commissioner's findings of fact are binding on the trial court and on this court, the same as the verdict of a jury. Reynolds v. George & Hoyt, 230 Iowa 1267, 300 N.W. 530; Alm v. Morris Barick Cattle Co., 240 Iowa 1174, 38 N.W.2d 161; Bruner v. Klassi, 241 Iowa 1007, 44 N.W.2d 366; Bocian v. Armour & Co., 244 Iowa 304, 306, 56 N.W.2d 900; Hassebroch v. Weaver Constr. Co., 246 Iowa 622, 625, 67 N.W.2d 549; Bousfield v. Sisters of Mercy, 249 Iowa 64, 68, 86 N.W.2d 109; Lamb v. Standard Oil Co., 250 Iowa 911, 916, 96 N.W.2d 730.

In Bousfield v. Sisters of Mercy, supra, the court stated: "This court has repeatedly held that where the facts are in dispute, or where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the commissioner in such matters are conclusive. If the evidence presents a question which should have been submitted to a jury, if the trial were before a jury, then the court is bound by the findings of the commissioner."

■ The burden is on plaintiff to prove loss of earning capacity. He must establish his case to this effect by a preponder-

ance of the evidence. Boswell v. Kearns Garden Chapel Funeral Home, 227 Iowa 344, 288 N.W. 402; Hansen v. State, 249 Iowa 1147, 91 N.W.2d 555.

Paragraphs 3 and 4 of section 86.30 have been cited and approved in the following cases: Haverly v. Union Constr. Co., 236 Iowa 278, 18 N.W.2d 629, and Bocian v. Armour & Co., supra.

When a claimant has suffered specific injuries, such as the loss of a limb, the statutory provision as to compensation controls. When the injuries consist of general bodily injuries, such as suffered by claimant in the case at bar, the percentage of disability must be computed and fixed. Claimant's disability should be evaluated from an industrial and not exclusively a functional standpoint. The deputy, who heard the case, and the commissioner agree as to this interpretation. The functional situation is an element to be considered but is not the final criterion as to a whole body disability. Alm v. Morris Barick Cattle Co., supra; Dailey v. Pooley Lumber Co., 233 Iowa 758, 10 N.W.2d 569; Diederich v. Tri-City Ry. Co., 219 Iowa 587, 593, 258 N.W. 899. We have used some language in some cases which has placed a cloud on this theory, but this is our considered, definite and now well-established opinion.

In Diederich v. Tri-City Ry. Co., supra, this court said:

"It is therefore plain that the legislature intended the term 'disability' to mean 'industrial disability' or loss of earning capacity and not a mere 'functional disability' to be computed in terms of percentages of the total physical and mental ability of a normal man."

In Moses v. National Union Coal Mining Co., 194 Iowa 819, 823, 184 N.W. 746, 747, we said: "The word 'disability', as here used, certainly means impairment or lessening of earning capacity, * * *."

IV. The doctors' testimony necessarily involved functional disability. Only two doctors testified as to functional disability of the whole body. Doctor Bakody placed such disability at "75% either permanently or for an indeterminate period of time and physically incapable to do manual labor." Doctor Clemons rated claimant as "70% permanently functionally disabled of the body as a whole and unable to do manual labor."

Doctor McDonald only placed a percentage estimate on the left arm and hand stating that it had 75 to 80% permanent loss of use. Doctor Stowell estimated percentages as to certain parts of the body: Left arm—20 to 60% permanent disability; as to an investigator 20%; as to manual labor 50%; as to other kinds of labor 20 to 30%. He placed the disability of the cervical spine as 10% to the body as a whole; the lumbar spine as 5% or under to the body. He testified the low back trouble eventually will probably clear up. He also stated that he found no evidence of cerebral concussion. Doctor Thornton testified that claimant had 40% disability as to his left arm; that any arthritis or fracture of the head was now well healed. He found some disability in the cervical spine.

As a statement of claimant's injuries in simple language it is best shown by the testimony of Doctor Thornton: Primary disability in his left elbow; some disability in his right elbow and in his neck; and probable minor disability in his lower back. He assumes the patient has some pain. He found no indication of brain damage.

V. The history of claimant after his release from the hospital and extending to the date of the hearing in February 1958 is important. His injuries did not permit him to resume his work with defendant. He could drive a car locally but not for long distances.

In the summer of 1957 he refereed about a dozen wrestling matches for which he received a fee of $50 for each match. A moving picture of parts of five of the matches was exhibited to the commissioner, the trial court and this court. About forty photographs showing claimant in various positions in refereeing the match were introduced in evidence. The physical exertion necessary for such work was very strenuous. Because of claimant's physical condition, and as a result of his injuries, he was not able to continue such work. He was completely worn out after each match and finally the doctor advised him he would have to cease refereeing.

Previously he and his wife had formed a real-estate company in Tulsa. Prior to claimant's injury his wife had maintained the office and the business. When he found he could

not perform strenuous manual work he joined his wife in the maintenance of the business. He secured a broker's real-estate license. He testified that he had shown a number of properties, but as yet had not sold any. He was a good typist and took care of the office work; wrote the contracts, deeds and mortgages and recorded all papers. During the past two years he and his wife had a net income of approximately $2500 per year from this business.

He engaged in an extensive real-estate transaction as to his properties. He owned a home which was clear and which he sold for $15,000. He then bought a new home for about the same price with a mortgage of $11,000 against the property which he assumed. The house was not quite large enough for his family so he added a room to the house. He had one car which was used in the real-estate business and for the personal use of the family. He had another second-hand car which the oldest boy used in attending school.

There was sufficient competent evidence to sustain the arbitration decision of the deputy commissioner on the basis of 65% permanent disability. We hold there was not sufficient competent evidence to warrant the decision of the commissioner in fixing permanent disability at 100%. We approve and affirm the trial court in establishing permanent disability at 65%, or on the same basis as fixed by the deputy commissioner.—Affirmed.

All JUSTICES concur.