CLARENCE N. OLSON, appellee, v. GOODYEAR SERVICE STORES, employer, AETNA CASUALTY & SURETY COMPANY, insurance carrier, appellants.

No. 51164.

(Reported in 125 N.W.2d 251)

December 10, 1963.

Peters & Peters, of Fort Dodge, and Duncan, Jones, Hughes, Riley & Davis, of Des Moines, for appellants.

McCarville & Bennett, of Fort Dodge, for appellee.

GARFIELD, C. J.—On April 15, 1961, plaintiff Clarence N. Olson sustained an injury to his back arising out of and in the course of his employment for defendant Goodyear Service Stores (herein called Goodyear). He filed a claim for compensation with the industrial commissioner (herein called commissioner). By agreement the claim was considered an application for arbitration under section 86.14, Codes, 1958, 1962. The matter was heard by the deputy commissioner who decided the disability resulting from the injury was temporary, not permanent, and awarded compensation accordingly.

Plaintiff filed a petition, under Code section 86.24, for review of the deputy's decision. It was submitted to the commissioner on the transcript of the evidence considered by the deputy and additional testimony of plaintiff and Dr. John T. Bakody, called by plaintiff. The commissioner found the injury aggravated a pre-existing condition of plaintiff's back and caused permanent disability to the extent of 10 percent of the body as a whole. Compensation was awarded on this basis.

Plaintiff appealed to the district court from the review decision of the commissioner. The appeal was submitted on the transcript of the evidence considered by the commissioner (see Code section 86.29). The district court found plaintiff was permanently disabled as a result of the aggravation of a pre-existing condition of his back to the extent of 40 percent of his body as a whole, rather than the 10 percent found by the commissioner, and ordered compensation paid plaintiff on such basis.

Goodyear and its insurance carrier have appealed to us from the court's decision. We feel compelled to reverse the decision and reinstate the commissioner's award.

I. We have many times called attention to the provision of Code section 86.29, "In the absence of fraud the findings of fact made by the industrial commissioner * * * shall be conclusive." Also to the provisions of section 86.30, insofar as applicable here, that a decision of the commissioner may be set aside if the facts found by him do not support it or if there is not sufficient competent evidence in the record to warrant the decision (subsections 3 and 4). Fraud is not claimed here.

■■ We have repeatedly and consistently construed these provisions as making the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the facts. Such findings have the same standing as a jury verdict. That is, if the evidence presents a question which should be submitted to a jury, if trial were to a jury, then the court is bound by the commissioner's findings. This is true even though the court might arrive at a different conclusion from the evidence. Wagner v. Otis Radio & Elec. Co., 254 Iowa 990, 119 N.W.2d 751, 752, and citations; Sister Mary Benedict v. St. Mary's Corp., 255 Iowa 847, 849, 124 N.W.2d 548, 549, and citations.

■ The real test is the sufficiency of the evidence to support the commissioner's decision. Bocian v. Armour & Co., 244 Iowa 304, 306, 56 N.W.2d 900, 901, 902, and citations; Hassebroch v. Weaver Constr. Co., 246 Iowa 622, 625, 67 N.W.2d 549, 551, and citations; Hemker v. Drobney, 253 Iowa 421, 424, 112 N.W.2d 672, 673.

It is the commissioner, not the courts, who weighs the evidence. Wagner v. Otis Radio & Elec. Co., supra, and citations.

Plaintiff maintains the commissioner's findings of fact are not conclusive where the evidence is not in conflict. The statement is inaccurate. It ignores the consideration that reasonable minds may differ on the inferences fairly to be drawn from undisputed facts. The rule is as we have stated it above. See Hassebroch case and many citations there. See also rule 344(f) 17, Rules of Civil Procedure.

■■ II. We will refer to so much of the record as satisfies us there was sufficient evidence to support the commissioner's decision.

Plaintiff was born November 30, 1903. On April 15, 1961, he stooped over to test a battery, had a terrific pain across his back down into a testicle and has never worked since then. There was no accident. However, our Compensation Act does not require that a personal injury be caused by accident. Almquist v. Shenandoah Nurseries, 218 Iowa 724, 730, 734, 254 N.W. 35, 94 A. L. R. 573, 578–581, and citations; Ford v. Goode, 240 Iowa 1219, 1222, 38 N.W.2d 158, 159; Jacques v. Farmers Lumber & Supply Co., 242 Iowa 548, 552, 47 N.W.2d 236, 239.

In September 1959 plaintiff had injured his back while unloading tires without wearing the back brace that had been prescribed for him. He received compensation for this injury from defendant's then insurance carrier, Continental Casualty Company. Appellant Aetna Casualty & Surety Company succeeded Continental as Goodyear's insurer on January 1, 1961. The claim filed by plaintiff, referred to at the outset, as a result of the April 1961 injury purported to be an application (petition) for review-reopening, as provided in Code sections 86.34, 86.35, of the award made for the 1959 injury. As previously indicated, it was agreed the application should also be considered one for arbitration under section 86.14 as against Aetna.

The deputy commissioner ordered Continental to pay plaintiff $37 per week for 100 weeks, dating from June 1, 1960, because of the aggravation of the 1959 injury caused by the 1961 injury. The deputy found this aggravation resulted in 20 percent disability of the body as a whole. Plaintiff did not appeal to the district court from this increased award against Continental. His petition to the commissioner for review was confined to the award for temporary disability against Aetna. (See Henderson v. Iles, 248 Iowa 847, 853, 82 N.W.2d 731, 735.)

Plaintiff's back trouble dates from 1921 when he slipped and fell while unloading paint for another employer. For about the next four years he worked only four days. Other injuries to his back prior to those in 1959 and 1961 occurred in 1936, 1937, 1943 and 1953. In the 20 years preceding the hearing before the deputy in November 1961, plaintiff made 15 trips to the Mayo clinic in Rochester, Minnesota, for treatment of his back. In

October 1941 surgery was performed which fused the vertebræ from the third lumbar to the sacrum.

A Mayo doctor whose deposition plaintiff offered testified such an operation, if successful, leaves about 20 percent permanent disability of the back. A second fusion operation was performed in August 1944 because the result of the first one was not good.

After plaintiff's first injury in 1921 and chiropractic and osteopathic treatments therefor, he was a patient of the late Doctor Steindler at the State University Hospital at Iowa City. Plaintiff was then in traction about six weeks. In May 1960 plaintiff went to Iowa City to see Dr. Carroll B. Larson about his back. Plaintiff was also seen by Doctor Larson about two weeks after the occurrence of April 15, 1961, and, finally, on June 30, 1961. Plaintiff offered the deposition of Doctor Larson as well as that of Dr. H. H. Young, the Mayo doctor.

Doctor Larson saw plaintiff before Doctor Young first saw him. In August 1960 Doctor Larson estimated plaintiff then had a partial more or less permanent disability of about 25 percent of the total back. When the doctor next saw him April 28, 1961, it was his opinion plaintiff had recently strained or restrained the same area he previously described as unstable following the previous injury, presumably that of September 11, 1959. When Doctor Larson last saw plaintiff in June 1961 he made no complaints he had not made before and the doctor thought his permanent partial disability was identical with his previous estimate of 25 percent of the total spine.

Doctor Young first saw plaintiff July 24, 1961, and again August 7 and in November of the same year. On these last two visits the doctor estimated plaintiff had a permanent disability of 40 percent of his back. However, Doctor Young also said, as stated, that such a fusion operation as plaintiff underwent in 1941, if successful, ordinarily leaves about 20 percent permanent partial disability of the back and that the result from this operation was not good. A fair inference from Doctor Young's testimony is that plaintiff's permanent disability increased somewhat less than 20 percent between the time of the fusion operation in 1941 and the times the doctor saw him following the

incident of April 15, 1961. The doctor did not say how much of this increase was caused by such incident.

Aside from the depositions of Doctors Larson and Young the only evidence submitted to the deputy was that of plaintiff himself and brief corroborative testimony regarding the occurrence of April 15 by a fellow servant. As stated, Doctor Bakody testified before the commissioner at the review hearing. However,. a record was not made of his testimony.

■ III. Code section 86.26 requires anyone who appeals to the district court from a decision of the commissioner to file with him a notice "setting forth in general terms the decision appealed from and the grounds of the appeal." Section 86.30 lists the grounds of such an appeal and states there are no others. Nicks v. Davenport Produce Co., 254 Iowa 130, 134, 115 N.W.2d 812, 814. As before indicated, so far as here applicable, these grounds are if the facts found by the commissioner do not support his order or if there is not sufficient competent evidence in the record to warrant the decision.

Plaintiff's notice of appeal to the district court states it is taken "for the reason he believes the commissioner erred in a portion of his findings of fact and conclusions of law and claimant believes he is entitled to a greater disability than that allowed by the commissioner." The notice does not assert either of the grounds of such an appeal, here applicable, found in section 86.30.

The court's judgment recites, "The sole question * * * is from the commissioner's decision pertaining to the extent of plaintiff's disability. * * *

"The court * * * finds plaintiff is permanently disabled as a result of a personal injury suffered on April 15, 1961 * * *; said injury aggravated a pre-existing condition of plaintiff's back and he is permanently disabled as a result of such aggravation to the extent of 40 percent of his body as a whole, this being the industrial disability attributable to the injury."

The court did not find the facts found by the commissioner do not support his decision or that there is not sufficient competent evidence to warrant it. The excerpts quoted from the judgment seem to indicate the court weighed the evidence for the

purpose of determining for himself the preponderance thereof and reaching his own conclusion from it, rather than its sufficiency to warrant the commissioner's decision. There is nothing in the testimony of either Doctor Larson or Doctor Young to support the trial court's decision. The 40 percent disability Doctor Young referred to was the cumulative result of plaintiff's long history of back troubles, not merely the disability caused by the incident of April 15, 1961.

Of course plaintiff was not entitled to recover from Aetna for the results of pre-existing injury or disease but only for an aggravation thereof which resulted in the disability found to exist. Yeager v. Firestone Tire & Rubber Co., 253 Iowa 369, 374, 375, 112 N.W.2d 299, 302, and citations.

However, we are not called upon to decide whether the evidence was sufficient to warrant the trial court's decision. Our question is the sufficiency of the evidence to warrant the commissioner's decision. It is he, not the courts, who finds the facts in compensation matters. As stated, the fact the court might arrive at a different conclusion from the evidence is not a ground for disturbing the commissioner's decision. See Wagner v. Otis Radio & Elec. Co., supra, 254 Iowa 990, 993, 119 N.W.2d 751, 752, 753, and citations.

IV. We think we have referred to enough evidence to demonstrate the commissioner's decision has sufficient support. Obviously the extent of plaintiff's disability resulting from the incident of April 1961 rather than from pre-existing occurrences cannot be fixed with mathematical exactness. A fair approximation is all that can be given. Doctor Larson was of the opinion no additional permanent disability resulted from what happened on April 15. As stated, a fair inference from Doctor Young's testimony is that such incident resulted in something less than 20 percent permanent disability. The commissioner's finding of 10 percent is thus within the range of the doctors' estimates, is warranted by the evidence as a whole, and is conclusive upon the courts.

The present case is much like Stowe v. Booth & Olson, Inc., 245 Iowa 1374, 66 N.W.2d 382, which is followed in Henderson v. Iles, supra, 248 Iowa 847, 854, 82 N.W.2d 731, 735, 736. The

1120

latter decision fully discusses Diederich v. Tri-City Railway Co., 219 Iowa 587, 258 N.W. 899, upon which this plaintiff relies, just as Henderson did in his case.

V. Plaintiff has made an all-out effort to uphold the trial court. His brief makes two main contentions. One is that there is no conflict in the evidence. In the sense that defendants offered no witnesses, this is true. However we point out at the end of Division I that reasonable minds may differ on the inferences fairly to be drawn from undisputed facts. Further, as above explained, the two doctors who treated plaintiff do not agree on the extent of permanent disability caused by the April 1961 incident. Certainly it cannot be said as a matter of law it was 40 percent, the extent found by the trial court.

Plaintiff's other main contention is that the doctors' testimony and the commissioner's finding relate to functional, not industrial, disability. Principal basis for this assertion, as to the doctors' testimony, is Doctor Young's statement that he did not know the terminology used in Iowa compensation cases regarding the difference between functional and industrial disability.

It is true the kind of disability with which the Compensation Act is concerned is industrial, not functional, disability. It is disability which reduces earning capacity, not merely bodily functions. Functional disability is an element to be considered in determining the reduction of earning capacity but it is not the final criterion. Martin v. Skelly Oil Co., 252 Iowa 128, 132, 133, 106 N.W.2d 95, 98; Yeager v. Firestone Tire & Rubber Co., supra, 253 Iowa 369, 375, 112 N.W.2d 299, 302; Nicks v. Davenport Produce Co., supra, 254 Iowa 130, 135, 115 N.W.2d 812, 815.

The burden to prove by a preponderance of the evidence reduction in earning capacity as a result of the April 1961 incident rested on plaintiff. Wagner v. Otis Radio & Elec. Co., supra, 254 Iowa 990, 993, 119 N.W.2d 751, 753, and citations; Martin v. Skelly Oil Co., supra, and citations. We have held it is not essential that a percentage of disability be specified by any witness. Yeager case, supra, at page 376 of 253 Iowa, page 303 of 112 N.W.2d. However, the argument that plaintiff's wit-

nesses did not testify to the kind of disability he was required to prove would normally be expected from a defendant, not a plaintiff.

The commissioner's decision indicates it pertains to the increase in industrial disability resulting from the occurrence of April 15 and that the commissioner fully understood the meaning of such disability. It cites and discusses Diederich v. Tri-City Railway Co., supra, 219 Iowa 587, 258 N.W. 899, on which plaintiff places much reliance. It also cites and quotes from Henderson v. Iles, supra, 248 Iowa 847, 82 N.W.2d 731, and cites Martin v. Skelly Oil Co., supra, 252 Iowa 128, 106 N.W.2d 95.

The commissioner's decision recites in part: "Disability * * * as defined by the Compensation Act means industrial disability, although functional disability is an element to be considered [citing the Martin case, supra]. In determining industrial disability, consideration may be given to the injured employee's age, education, qualifications, experience and his inability, because of the injury, to engage in employment for which he is fitted. * * *

"After carefully reviewing all the competent evidence and all reasonable inferences to be drawn therefrom, it appears that the decision of the deputy commissioner is correct and should be affirmed except as to the extent of plaintiff's industrial disability."

For judgment reversing that appealed from and affirming the review decision of the commissioner filed in his office July 26, 1962, the cause is—Reversed and remanded.

All JUSTICES concur.