**Margaret Jane SIMBRO, Appellee,**

v.

**DELONG'S SPORTSWEAR, American Mutual Liability Insurance Company, and Robert C. Landess, Iowa Industrial Commissioner, Appellants.**

No. 67822.

Supreme Court of Iowa.

April 20, 1983.

As Corrected on Denial of Rehearing May 11, 1983.

Michael B. Devine of Bump & Haesemeyer, P.C., West Des Moines, for appellants.

Harold B. Heslinga, Oskaloosa, and Phillip Vonderhaar, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

In this appeal we hold that workers' compensation benefits for permanent partial disability of two members caused by a single accident is a scheduled benefit. We also hold that the degree of impairment must be computed on the basis of a functional, rather than an industrial, disability. The employer, Delong's Sportswear, and its insurance carrier, American Mutual Insurance Company, appeal from the district court's reversal of the Industrial Commission's award of four percent permanent partial disability based on the functional disability of the employee, Margaret Jane Simbro, and the remand of the case to the commissioner to have the benefits computed on an industrial disability basis. We reverse and remand for an order affirming the commissioner.

At the time of the hearing before the deputy industrial commissioner, the employee was a thirty-six-year-old female who had been employed as a material cutter. She made school and award jackets, a job which required arm and body strength to do heavy lifting and to use heavy cutting instruments.

The employee sought disability benefits for an industrial injury which was caused by a single accident on April 5, 1978, and became disabling on June 1, 1979. The employee was treated by an orthopedic surgeon who eventually diagnosed her problem as a compression of the ulnar nerve in both wrists. Surgery was performed on each wrist. Her physician reported that after surgery she had a permanent physical impairment of three percent of each upper extremity.

There was no dispute about the medical payments and weekly benefits that terminated at the end of the healing period. Controversy arose, however, over the amount of benefits the employee was to receive for permanent partial disability.

In the hearing before a deputy industrial commissioner, the employee testified that her injury-induced disability prevented her from resuming the heavy work required by her employment. She presented testimony of an expert witness who stated that she had a 35% permanent partial industrial disability. Based upon the medical opinion of her physician, the deputy concluded that Simbro had a combined functional impairment of four percent. She was then awarded benefits based on functional disability of four percent of the five hundred weeks scheduled benefit. The industrial commissioner affirmed this ruling. The district court reversed the commissioner, however, and ruled that a partial loss to two members was an unscheduled loss that is determined industrially. The correctness of the commissioner's assessment of the functional disability is not in issue; the sole issue concerns the correct method of evaluating a partial loss of two members.

The two methods used to evaluate a disability, functional and industrial, are dissimilar. Functional disability is assessed solely by determining the impairment of the body function of the employee; industrial disability is gauged by determining the loss to the employee's earning capacity. Functional disability is limited to the loss of physiological capacity of the body or body part. Industrial disability is not bound to the organ or body incapacity, but measures the extent to which the injury impairs the employee in the ability to earn wages. Criteria for the test of industrial disability include the extent of functional disability, along with the employee's age, education, qualification, experiences, and the injury-induced inability of the employee to engage in employment for which the employee is fitted. *Graves v. Eagle Iron Works,* 331 N.W.2d 116, 117–18 (Iowa 1983). As evidenced by the present case, application of the tests may yield different results.

■ Permanent partial disabilities are classified as either scheduled or unscheduled and this court has approved the use of functional and industrial methods of determination with the appropriate classification. A specific scheduled disability is evaluated by the functional method; the industrial method is used to evaluate an unscheduled disability. *Martin v. Skelly Oil Co.,* 252 Iowa 128, 133, 106 N.W.2d 95, 98 (1960). In our most recent case we followed this rule and held that an employee with a permanent partial disability to a leg had a scheduled disability that required the determination of the percentage of impairment of his leg without regard to the industrial disability factors. *Graves,* 331 N.W.2d at 118.

■ The classification of permanent partial disability into either a scheduled or unscheduled loss is derived from section 85.-34(2). Subsection (2) provides in lettered paragraphs (a) through (t) a schedule of the number of weeks of benefits for loss of designated organs or members, such as the loss of a leg, arm, or eye. For unscheduled disabilities, those that paragraph (u) defines as all cases "other than those ... described or referred to in paragraphs 'a' through 't'," benefits are based on the injury to the body as a whole.

The dispute in this case revolves around the proper interpretation of paragraphs (s) and (u), which in appropriate part state:

[F]or all cases of permanent partial disability such compensation shall be paid as follows:

s. The loss of both arms, or both hands, or both feet, or both legs, or both eyes, or any two thereof, caused by a single accident, shall equal five hundred weeks and shall be compensated as such, however, if said employee is permanently and totally disabled he may be entitled to benefits under subsection 3.

. . . .

u. In all cases of permanent partial disability other than those hereinabove described or referred to in paragraphs "a" through "t" hereof, the compensation

shall be paid during the number of weeks in relation to five hundred weeks as the disability bears to the body of the injured employee as a whole.

If it is determined that an injury has produced a disability less than that specifically described in said schedule, compensation shall be paid during the lesser number of weeks of disability determined, as will not exceed a total amount equal to the same percentage proportion of said scheduled maximum compensation.

The employer claims that the plain and unambiguous language of paragraphs (s) and (u) makes this partial loss to two arms to be a scheduled loss with the disability determined by the functional method. The district court arrived at a different conclusion, however, and it relied on statutory construction to find legislative intent that paragraph (s) "was not a scheduled injury provision which would encompass the partial loss of two major members." The court then determined that the disability herein should be evaluated under the first unnumbered paragraph of paragraph (u) on an industrial basis.

In reaching its conclusion the district court relied upon two premises: (1) that prior to 1974 paragraph (s) losses were evaluated industrially, not functionally, and (2) that the legislature by amending paragraph (s) in 1974 did not intend to change the method of evaluation. In determining the validity of the conclusion we find it necessary to examine the 1974 amendment, its purpose, and its relationship to the method of evaluation.

The last legislative change in paragraph (s) occurred in 1974. The legislature deleted previous language which had provided that the maximum weeks of disability was to equal "the permanent total disability" and it replaced that language by providing the present five hundred weeks of disability as the maximum. See 1974 Iowa Acts ch. 1112 § 1. Prior to 1973 the benefit period for permanent total disability was specified in section 85.34(3) (1971) to be "a period not to exceed 500 weeks." During the 1973

session, however, the legislature amended subsection (3) and deleted the quoted words without amending paragraph (s). 1973 Iowa Acts ch. 144 § 10. Thus, after the 1973 session the law provided for maximum permanent total disability benefits to continue indefinitely until the total disability ceased. Moreover, paragraph (s) benefits were tied by reference to an indefinite number of weeks. This apparent legislative oversight was remedied when the 1974 General Assembly enacted chapter 1112 which set the maximum disability under paragraph (s) at five hundred weeks.

At no relevant time has paragraph (s) provided specific direction concerning the method of evaluating disability, except to refer persons who are permanently and totally disabled to subsection (3). Case law has provided this specific authority and, as previously indicated, we have evaluated scheduled disabilities on a functional basis and unscheduled losses on an industrial basis. *Martin,* 252 Iowa at 133, 106 N.W.2d at 98. We find no case authority that either designates paragraph (s) as a scheduled benefit section or indicates the method of evaluating a partial loss of two members.

The commissioner, with regard to the interpretation of paragraph (s), stated in his final agency ruling:

It appears, then, that an injury to two hands caused by the same accident was entitled to be evaluated industrially under the old law.... The claimant would be entitled to have the disability to his hands determined industrially under sections 85.34(2)(s), 85.34(2)(u) and 85.34(3) had not the Code of Iowa, in respect to those sections, been amended in recent years.

The district court accepted the commissioner's interpretation that before 1974 the present injury should be industrially evaluated, but rejected the interpretation that after 1974 the injury should be functionally evaluated. Although we discern serious questions about the commissioner's pre-1974 interpretation, we need not address this issue because we assume for the purpose of this appeal that prior to the amendment of

paragraph (s) the present injuries would have been evaluated industrially.

The district court reasoned that by its 1974 amendment of paragraph (s) the legislature did not intend to change an unscheduled injury that is determined industrially into a scheduled injury that is determined functionally. We cannot agree.

We conclude that the amendment to paragraph (s) clearly makes the paragraph a scheduled disability subject to functional evaluation. The plain and unambiguous language in the amendment of paragraph (s) which sets out a definite schedule of benefits shows a clear intent by the legislature to make the loss of two members a scheduled loss. We assume that at the time the legislature amended paragraph (s) it was familiar with the existing case law that evaluated scheduled disability on a functional basis. *See Peffers v. City of Des Moines,* 299 N.W.2d 675, 678 (Iowa 1980). Thus, if it had wished us to apply a different method of evaluation to paragraph (s) losses than we apply to other scheduled losses, it would have so indicated.

The trial court also perceived a difference between a total loss of two members and a partial loss. We find such an interpretation to be illogical.

Specific provision is made for the determination of a partial loss to scheduled injuries by a formula in the second unnumbered paragraph of paragraph (u). At all relevant times paragraph (u) has remained unchanged. We conclude that paragraphs (s) and (u) must be read in conjunction with each other. *See Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530, 532 (Iowa 1981). We believe that it would be illogical to infer a legislative intent that a partial disability which falls under the parameters of paragraph (s) would be treated differently than other scheduled losses.

■ In conclusion we agree with the ruling of the commissioner that a partial loss under paragraph (s) must be determined by evidence of the functional loss rather than the industrial loss. We therefore reverse the district court and remand this matter for an order affirming the commissioner.

REVERSED AND REMANDED.

All Justices concur except McCORMICK, J., and REYNOLDSON, C.J., who concur specially.

McCORMICK, Justice (concurring specially).

I concur in the opinion and write separately only to point out that this case illustrates again the vast disparity in workers' compensation benefits and injustice which can result from a determination that an injury has sufficient conceptual neatness to fit the schedule and thus be compensable without regard to actual industrial disability. *See Graves v. Eagle Iron Works,* 331 N.W.2d 116 (Iowa 1983) (McCormick, J., concurring).

REYNOLDSON, C.J., joins this special concurrence.