**TRADE PROFESSIONALS, INC. and Virginia Surety Co., Appellants,**

v.

**Bobby SHRIVER, Appellee.**

**No. 02–0409.**

Supreme Court of Iowa.

May 7, 2003.

Peter J. Thill of Betty, Neuman & McMahon, L.L.P., Davenport, for appellants.

David D. Drake of Lawyer, Lawyer, Dutton & Drake, L.L.P., West Des Moines, for appellee.

LARSON, Justice.

Trade Professionals, Inc. and its workers' compensation insurance carrier, Virginia Surety Co., appeal from a district court judgment affirming workers' compensation benefits awarded by the industrial commissioner. We affirm.

## I.  *Facts and Prior Proceedings.*

This workers' compensation claimant, Bobby Shriver, injured his back on June 11, 1998, while working in Cedar Rapids as a pipe fitter for Trade Professionals. Trade Professionals and its insurance carrier (collectively the employer) admitted the injury arose out of and in the course of Shriver's employment and named an orthopedic surgeon to treat Shriver's back strain. Shriver took no time off work for his injuries and continued to work full-time at his normal duties at a new job site until a company-wide layoff occurred on June 24, 1998. Shriver returned to his home in Missouri and took a job at a hog facility, power washing hog crates. He continued to have pain in his back and between his shoulder blades. He consulted Dr. Nelson, an orthopedic surgeon who was the employer-authorized treating doctor, in Des Moines. Shriver saw Dr. Nelson on September 10, 1998. Dr. Nelson told Shriver to do stretching exercises, take two weeks of physical therapy, and go back to work in two weeks. Dr. Nelson saw Shriver twice, once just after the injury and once in May of 1999. This doctor indicated there was no permanent injury. Shriver sought treatment from his chiropractor in Missouri, Dr. Henson, in September

1998. He considers Dr. Henson to be his regular treating doctor, but the employer did not authorize treatment by Dr. Henson, and it so notified Shriver. Dr. Henson referred Shriver to a neurologist, Dr. Rowe, and a "physiatrist" (doctor who specializes in physical medicine and rehabilitation), Dr. Tait. Neither doctor recommended surgery; Dr. Tait recommended treatment with medication. The employer sent Shriver to an independent neurologist, Dr. Boarini, who said his back pain was due to degenerative changes in his lower back and was not due to any injury. He further found that nothing indicated a permanent impairment. He recommended an aggressive back exercise program.

Shriver filed a petition with the industrial commissioner on November 24, 1998. A hearing was scheduled for October 12, 2000. Despite an assignment order stating that all case preparation should be completed sixty days before the hearing, Shriver submitted a report dated October 4, 2000, from Dr. Henson. That report for the first time indicated that Shriver had a permanent partial impairment as a result of his injury. The deputy commissioner excluded the report because it was not submitted sixty days before the hearing. The deputy found against Shriver on the ground there was no evidence that he was entitled to temporary total disability, healing-period benefits, or that he had any permanent disability. Shriver filed an intra-agency appeal.

On Shriver's appeal the chief deputy workers' compensation commissioner reversed the deputy commissioner's exclusion of Dr. Henson's letter, on the ground that admission of the letter was required by this court's decision in *Schoenfeld v. FDL Foods, Inc.*, 560 N.W.2d 595 (Iowa 1997). The chief deputy gave greater

weight to Dr. Henson's opinions than those of the other doctors and gave Shriver an industrial disability rating of twenty-five percent. He also allowed payment of Dr. Henson's fees, despite the fact she was not the authorized physician, on the ground the employer lost the right to control care by claiming Shriver's condition was not causally related to the work injury.

On the employer's petition for rehearing, the chief deputy concluded that, while the admission of the late report was required by *Schoenfeld*, any resulting prejudice could be cured by allowing the employer thirty days to submit new evidence in response to the report. The employer submitted new evidence, in the form of letters from the treating physician and another neurosurgeon who also had examined Shriver. The chief deputy reaffirmed his ruling.

The employer petitioned for judicial review, claiming the chief deputy erred in (1) admitting the late-filed report, (2) refusing to remand the case to the deputy commissioner who first heard it, (3) finding that Shriver sustained a twenty-five percent industrial disability, and (4) assessing the unauthorized medical expenses of Dr. Henson to the employer.

The court on judicial review found that any prejudice to the employer from the admission of the report was cured by allowing the employer thirty days to respond, and the agency did not abuse its discretion in admitting the report. The court also found that the decision to keep the case, rather than to remand it to the original deputy commissioner, was within the agency's discretion. The court also found the twenty-five percent industrial disability rating was supported by substantial evidence and, since the employer disputed its liability for the ongoing pain of the worker, the employer lost the right to

direct medical care, and it was therefore liable for Dr. Henson's bills.

## II. *Admission of the Medical Report.*

In *Schoenfeld* the commissioner excluded the medical evaluation report of the treating physician because it was completed after the deadline for discovery. *Schoenfeld*, 560 N.W.2d at 596. We reversed, finding that the report should not have been excluded under the unique circumstances of that case, since its admission did not unfairly surprise or prejudice the employer. *Id.* at 598. As the treating physician and one who had been submitting medical information to the employer from the date the injury occurred, it was logical to have his evaluation of the permanency of the injury, and the employer could not reasonably claim surprise.

In this case Dr. Henson claims she received authorization from the company representing the employer's insurance company and had been paid by the employer for the first three visits Shriver made to her office in November 1998. She also received a request for medical records from the company handling the claim for the employer. Shriver claims the employer was well aware that Dr. Henson had been treating Shriver. The key difference in this case from *Schoenfeld* is that this doctor was not the authorized treating physician. Also, unlike in *Schoenfeld*, this employer did not know there was a medical opinion stating that Shriver had a permanent impairment. That knowledge did not come until the October 5 letter.

*Schoenfeld* should not be read so broadly as to require admission of evidence received after the cutoff date on the basis the employer merely knew of the existence of the reporting doctor. We believe the chief commissioner's solution to the prejudice argument, giving the employer an additional thirty days to respond, provides a

reasonable balancing of the parties' interests. The employer had sufficient time to consult both the treating physician and an outside expert, and did so. The employer did not depose Dr. Henson, but there is no indication it could not have done so.

The circumstances of this case are very similar to those in *Schoenfeld* in which we stated that the "exclusion of the evaluation report, under these circumstances, would run contrary to the primary purpose of the workers' compensation statute, which is for the benefit of the worker." *Id.* at 599. In any event, as we noted *Schoenfeld*, these rulings are discretionary. *Id.* at 598. We believe, in light of the thirty days allowed the employer to rebut the report, the admission of the report was not an abuse of discretion.

### III. *The Finding of Industrial Disability.*

■ The standard of review is substantial evidence on the record to support the agency's decision. "The fact that a different or opposite result may have been fully justified by the record is of no importance." *Carstensen v. Bd. of Trustees*, 253 N.W.2d 560, 562 (Iowa 1977); *see also Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994). "The substantial evidence test accords respect to the expertise of the administrative tribunal and helps promote uniform application of the law." *City of Davenport v. PERB*, 264 N.W.2d 307, 312 (Iowa 1978).

■ When viewing the evidence as a whole, including the report of Dr. Henson, there is substantial evidence to support this decision. To evaluate an unscheduled disability, courts use the industrial method, which measures an employee's loss of earning capacity. *Simbro v. Delong's Sportswear*, 332 N.W.2d 886, 887 (Iowa 1983). Criteria to consider include an employee's work experiences, age, educational level, qualifications, experiences, and the extent to which the injury prevents the employee from engaging in work to which he is fitted. *Id.* Shriver was forty-seven years old at the time of the hearing, had a high school education, had only worked at manual labor jobs, and had been placed on restrictions by Dr. Henson that drastically reduced his ability to perform manual labor. The agency, in its role as fact finder, determines whether to accept or reject expert testimony and what weight to give it. *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998). The agency chose to give more weight to Dr. Henson, who had the most direct contact with Shriver, than it did to Drs. Nelson and Boarini, whose contacts with Shriver were more limited. This clearly falls within the discretion of the agency.

■ Dr. Henson did not assess a permanent impairment percentage, but as the district court concluded, the lack of a permanent impairment percentage was not dispositive. It "is not essential that a percentage of disability be specified by any witness." *Olson v. Goodyear Serv. Stores*, 255 Iowa 1112, 1120, 125 N.W.2d 251, 257 (Iowa 1963). Industrial disability is determined by the effect the injury has on the employee's earning capacity. *Bearce v. FMC Corp.*, 465 N.W.2d 531, 535 (Iowa 1991). Here, the commissioner looked at relevant factors and determined Shriver's age, combined with the restrictions placed on him by Dr. Henson and his prior work history at manual jobs, led to a reduction in his earning capacity. That decision is supported by substantial evidence in the record and should be affirmed.

### IV. *Payment of Medical Bills of Nonauthorized Doctor.*

■ The employer argues that Shriver did not file an application for alternative care and chose not to be treated by

the doctor authorized by the employer. Since Shriver's care with Dr. Henson was not authorized, the employer should not have to pay for it, according to the employer. The agency and the court both determined that, once the employer contested its liability for the continuing pain Shriver was experiencing, it lost the ability to control the treatment. The Iowa Administrative Code provides:

Application cannot be filed under this rule [the rule for applying for alternative care] if the liability of the employer is an issue. If an application is filed where the liability of the employer is an issue, the application will be dismissed without prejudice.

Iowa Admin. Code r. 876—4.48(7) (2001). The industrial commissioner has interpreted this section to mean that,

in Iowa, an employer and its insurer have the right to control the medical care claimant receives, with two exceptions. The first is where the employer has denied liability for the injury. The second is where claimant has sought and received authorization from this agency for alternative medical care.

*Freels v. Archer Daniels Midland Co.*, # 1151214 (7/30/2000).

The employer contends that, since it admitted the injury and directed Shriver's care, including designation of Dr. Nelson as the treating physician, it should be allowed to continue to direct medical care. On the petition for rehearing, the chief deputy found "[d]efendants cannot admit an injury arising out of and in the course of employment and claim the right to control the medical treatment, but at the same time deny that the disabling condition is causally connected to the injury and therefore they are not liable for the disability." We agree.

Iowa Code section 85.27 (2001) provides that "the employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care. The treatment must be offered promptly and be reasonably suited to treat the injury without undue inconvenience to the employee." The authorized treating physician in this case was in Des Moines. Shriver lived more than a hundred miles away in Trenton, Missouri. The employer did offer Shriver the option of visiting a Dr. Vale, in Columbia, Missouri; Columbia is three hours away from his house, according to Shriver. Even if the employer did still have the right to control treatment, neither of these options appears to offer Shriver treatment "without undue inconvenience."

## V. *Decision Not to Remand to Original Deputy Commissioner.*

■ The employer contends that the original deputy commissioner, who had the opportunity to assess Shriver's credibility, should be the one to make the determination on the merits of all the issues and that it was an abuse of discretion under the facts of this case not to remand to her. Iowa Code section 86.24(2) states: "In addition to the provisions of section 17A.15, the workers' compensation commissioner may affirm, modify, or reverse the decision of a deputy commissioner or the commissioner *may* remand the decision to the deputy commissioner for further proceedings." Iowa Code § 86.24(2) (emphasis added). The Iowa Administrative Procedure Act provides that,

[o]n appeal from or review of the proposed decision, the agency has all the power which it would have in initially making the final decision except as it may limit the issues on notice to the parties or by rule. The agency may reverse or modify any finding of fact if a preponderance of the evidence will sup-

port a determination to reverse or modify such a finding. . . .

Iowa Code § 17A.15(3). The only time final findings of fact must be prepared by the person who heard the case originally is in cases in which "demeanor of witnesses is a substantial factor." Iowa Code § 17A.15(2). The employer does not argue that demeanor is a factor in this case. The agency was within its discretion in refusing to remand the case.

## VI.  *Conclusion.*

The decision of the industrial commissioner was supported by substantial evidence. Under the circumstances of this case, the admission of the late-filed report was within the discretion of the chief deputy commissioner. Further, the case was not required to be remanded within the agency, and the employer was properly ordered to pay the medical fees of Dr. Henson. We accordingly affirm.

**AFFIRMED.**

All justices concur except NEUMAN, J., who takes no part.