# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-4048

_____

Douglas Spencer,

*Plaintiff - Appellant,*

v.

Annett Holdings, Inc.,

*Defendant - Appellee.*

_____

No. 13-1133

_____

Douglas Spencer,

*Plaintiff - Appellee,*

v.

Annett Holdings, Inc.,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: November 19, 2013
Filed: July 8, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Douglas Spencer, a former employee of Annett Holdings, Inc., sued Annett, claiming that the company acted in bad faith when it failed to provide medical care and refused to pay him healing-period benefits. Annett counterclaimed for fraud, alleging that Spencer falsely claimed that his injury was work-related when it resulted from a fall at his home. On cross-motions for summary judgment, the district court[1] concluded that neither party had presented a submissible case for trial and dismissed the action. We affirm.

I.

Spencer was a trucker for Annett in January 2007 when he reported to Annett that he suffered a work-related knee injury after slipping off the back of his flatbed trailer. Spencer claimed a work injury that would be compensable under Iowa's workers' compensation laws, so Annett was "obliged to furnish reasonable services and supplies to treat" Spencer, and Annett had "the right to choose the care" that it was obliged to provide. Iowa Code § 85.27(4). In other words, Annett had the right to determine which physicians and other professionals would provide Spencer's care. *See Petrillo v. Lumbermens Mut. Cas. Co.*, 378 F.3d 767, 769 (8th Cir. 2004).

Annett authorized Spencer to see a physician near his home in Tennessee. The physician told Annett that Spencer should be placed on light duty work, and Annett offered Spencer that type of work in Des Moines. Spencer accepted the offer and

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

assumed light duty work for about a week. Annett then authorized Spencer to see a new physician in Des Moines, and the new physician concluded that Spencer could resume his normal duties.

Spencer returned to full duty. After about two months, without seeking approval from Annett for any further care, he visited his family doctor for treatment of knee pain. The family doctor ordered an MRI examination. Spencer, again without Annett's approval, attended another appointment with an orthopaedic surgeon. The surgeon diagnosed Spencer with a meniscus tear in his knee and opined that surgery was necessary. The surgeon also provided Spencer with a "work status" form that said Spencer required knee surgery and should perform no work "until further notice."

Apparently without notifying Annett that he desired surgery or providing the company with the "work status" form, Spencer retained an attorney in Tennessee. The attorney notified Annett that Spencer was electing to proceed under the laws of Tennessee, which—according to Spencer's lawyer—meant that Spencer could make his own health care arrangements (including surgery), and then seek reimbursement from Annett. On May 8, 2007, Annett responded that Iowa law governed Spencer's care, because Spencer had signed an agreement to that effect, and noted that Iowa law permits an employer to direct an employee's care if the employer is paying for the care. Annett requested that Spencer return to Des Moines for an independent medical examination by the Iowa physician whom Spencer had seen previously, so that physician could determine whether surgery was necessary.

Spencer refused to attend the examination in Des Moines, and his attorney told Annett that Spencer would postpone the surgery while Spencer sought an order from the Tennessee Department of Labor that Tennessee was the appropriate forum for Spencer's claim. The Tennessee agency, however, decided in June 2007 that Iowa was the proper venue for Spencer's workers' compensation claim. Over a month

later, Spencer's newly retained Iowa attorney contacted Annett, seeking copies of its records relating to Spencer. Then, in a letter about two weeks after that, on August 9, Spencer's Iowa attorney requested that Annett authorize knee surgery. Annett responded a week later, asking for "some additional time to investigate the need for surgery."

Under Iowa law, an employee who is dissatisfied with the reasonableness of care proffered by an employer who accepts liability for the work injury may petition the Iowa workers' compensation commissioner for an order that permits the employee to obtain care that the employer declines to authorize. *See* Iowa Code § 85.27(4). Spencer filed two different petitions for alternate care with the commissioner before September 19, seeking a ruling that Annett was required to authorize surgery. Annett ultimately offered to authorize surgery if Spencer would "represent that the only known injury to his left knee" was the claimed injury in January, and Spencer so represented. Spencer's surgeon performed authorized knee surgery on October 5.

After the surgery, in November 2007, Spencer filed a workers' compensation arbitration petition, seeking to require Annett to provide medical care for injuries to his left foot and hands and further treatment for his knee. Annett questioned whether these injuries were related to the initial injury from January 2007. Spencer also requested healing-period benefits from Annett for the period before his surgery. Spencer and Annett eventually reached a settlement agreement, with Annett admitting liability for Spencer's knee injury and agreeing to pay healing-period benefits and all medical bills related to the knee injury.

In July 2009, however, Spencer filed an action in Iowa state court against Annett, alleging that the company had denied him medical care and delayed payment of benefits in bad faith. The next month, Annett received a phone call from a neighbor and friend of Spencer's wife. The neighbor claimed that Spencer was not injured in a fall off his truck while working for Annett, as Spencer had represented,

but rather had slipped while attending to personal business inside a workshop at his home. According to the neighbor, Spencer and his wife had bragged that they were getting Annett to pay for his knee surgery. Over seven months later, Annett's attorney took a recorded statement from the neighbor. Another seven months after that, in October 2010, the neighbor signed and notarized the transcript of her recorded statement for Annett, two months after she failed to respond to a subpoena in August 2010.

In the meantime, in early 2010, Spencer's surgeon retired and recommended another doctor to him. Annett refused to authorize and pay for Spencer to see the recommended doctor and sent him to a different physician. In May 2010, Spencer filed a petition for alternate medical care with the Iowa workers' compensation commissioner, seeking an authorization that would require Annett to pay for his care by the recommended doctor. Annett responded to the claim in June 2010. The commission denied Spencer's petition, and the Iowa courts upheld the denial on judicial review that concluded in 2012.

In September 2010, Annett filed counterclaims in Spencer's July 2009 Iowa state court action, in which Spencer had alleged bad-faith denial of medical care and delay of payments. Annett brought counterclaims for fraudulent misrepresentation and unjust enrichment against Spencer based on the information it had learned from Spencer's neighbor. In the months that followed, Annett refused to authorize any more medical treatment for Spencer, claiming that he had not suffered a work injury. In July 2011, Spencer voluntarily dismissed his state court action. He brought this federal action against Annett in December 2011, based on diversity jurisdiction, alleging essentially the same state-law claims that were alleged in the previous state court action. Annett again counterclaimed.

The district court granted summary judgment for Annett on all of Spencer's claims. The court determined that it could not consider the claim for bad-faith failure

to provide medical care, because Spencer had not exhausted his administrative remedies as required by Iowa law. The district court ruled alternatively that even if the claim were available, all of Spencer's bad-faith claims failed because Annett had a reasonable basis to deny Spencer's claims. On Annett's counterclaims, the court ruled that by participating in Spencer's June 2010 petition for alternate medical care, Annett admitted liability for Spencer's injury and that Spencer was entitled to summary judgment based on the doctrine of judicial estoppel.

Spencer appeals the dismissal of his claims for bad-faith failure to provide medical care and to pay healing-period benefits; Annett cross-appeals the dismissal of its counterclaim. We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Spencer's state-law claims in this diversity action are governed by the substantive law of Iowa. *Kramer v. Cash Link Sys.*, 715 F.3d 1082, 1086 (8th Cir. 2013).

II.

A.

Under Iowa workers' compensation law, an employer who accepts liability for the work injury of an employee "has the right to choose the care" of the employee. Iowa Code § 85.27(4). "[A]n employee who is dissatisfied with the reasonableness of care proffered may petition the industrial commissioner for relief." *Kloster v. Hormel Foods Corp.*, 612 N.W.2d 772, 775 (Iowa 2000). The petition process permits the employee to seek an order from the commissioner that requires the employer to pay for alternate medical care preferred by the employee.

Spencer argues that the district court erred by determining that he must exhaust administrative remedies before seeking judicial review of his claim that Annett denied medical care in bad faith. Under Iowa law, however, the "rights and remedies" under the workers' compensation statutes are "the exclusive and only rights and remedies of the employee . . . [a]gainst the employee's employer." Iowa Code § 85.20(1). This exclusivity provision applies to "[c]laims of dissatisfaction with care," and includes claims "where an employee was denied medical care for a period of time." *Good v. Tyson Foods, Inc.*, 756 N.W.2d 42, 45-46 (Iowa Ct. App. 2008).

In this case, Annett provided Spencer's initial care in January 2007, agreed in May 2007 that it would authorize surgery if the doctor in Des Moines made the appropriate determination, and eventually did authorize surgery in September 2007. Spencer claims that Annett acted in bad faith when it refused to authorize surgery between June and September 2007. But this is merely a claim of "dissatisfaction with care," based on Annett's delay in authorizing surgery. The district court correctly ruled that Iowa law required Spencer to exhaust this claim through the exclusive administrative process. *Kloster*, 612 N.W.2d at 774-75; *Good*, 756 N.W.2d at 45-46.

Spencer argues that exhaustion should be excused, because Annett would have denied liability for the injury. When an employer denies liability for an injury, it does not have a duty to provide medical care until its liability has been determined. While liability is disputed, the employee may not file petitions for alternate care. *R.R. Donnelly & Sons v. Barnett*, 670 N.W.2d 190, 196-97 (Iowa 2003). Spencer says the commissioner inevitably would have dismissed his claim of dissatisfaction with care because Annett's liability would have been unsettled. We reject this contention, because Spencer did not make a sufficient showing of futility. Spencer filed alternate care petitions in August and September 2007, and he does not claim that Annett denied liability then. The record is insufficient to presume that Annett would have denied liability if Spencer had exhausted his claim of dissatisfaction with care through the administrative process.

Spencer also argues that his claim is not really about dissatisfaction with care based on delay, but a total denial of medical care. He contends that the Iowa courts have recognized a bad-faith claim against an employer for a total denial of care, and that such a claim need not be exhausted with the commissioner. Spencer cites no Iowa authority, however, that recognizes a bad-faith claim against an employer for failure *to provide medical care*. The best he can do is direct us to authorities that recognize claims against insurers or self-insured employers for failure *to pay benefits*. *See, e.g.*, *McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323, 328-39 (Iowa 2002); *Boylan v. Am. Motorists Ins. Co.*, 489 N.W.2d 742, 744 (Iowa 1992). This court's previous observation on this point remains a correct statement of Iowa law: "'Up to now, all of the appellate decisions in [Iowa] considering bad faith torts in the worker's [sic] compensation context have involved a bad faith failure to pay benefits.'" *Petrillo*, 378 F.3d at 770 n.3 (quoting *Thielen v. Aetna Cas. & Surety Co.*, No. 00-1075, 2003 WL 118204, at *3 (Iowa Ct. App. Jan. 15, 2003)) (alterations in original). The district court correctly ruled that Spencer was required to exhaust his claim with the commissioner.

## B.

Drawing on a different line of Iowa cases, Spencer contends that he presented a submissible claim against Annett for bad-faith refusal to pay healing-period *benefits*, as opposed to denial of medical care. *See Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 483 (Iowa 2007). To show bad faith, Spencer must prove that the employer had no "reasonable excuse" for delaying or denying benefits. *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 397 (Iowa 2001). So long as the employee's claim is "fairly debatable," the employer has a reasonable basis to delay or deny, and an employee cannot establish bad faith. *Id.*; *see also Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

Spencer argues that Annett acted in bad faith when it refused to pay healing-period benefits from April to October 2007, while Spencer was awaiting surgery on his knee. Annett refused to pay benefits because Spencer would not submit to an examination by Annett's chosen physician in Des Moines, and Iowa law authorizes a suspension of benefits if an employee refuses to comply with a reasonable request for an examination. Iowa Code § 85.39. Spencer acknowledges that an employer has a right to request an employee to submit for examination "at some reasonable time and place and as often as reasonably requested," *id.*, but argues that Annett had no right to suspend benefits, because it was unreasonable for the company to ask him to travel over 700 miles from Tennessee to Iowa.

The Iowa Supreme Court has opined about unreasonable distances in different contexts. The court ruled that where an employer was required to provide medical care to an employee, it was an "undue inconvenience" under Iowa Code § 85.27 to require travel of more than 100 miles from Trenton, Missouri to Des Moines for care by a treating physician. *Trade Prof'ls, Inc. v. Shriver*, 661 N.W.2d 119, 124 (Iowa 2003). The court also upheld a determination that work offered 387 miles from an employee's home was not "suitable work," so the employee's rejection of the offer did not disqualify him from receiving disability or healing-period benefits under Iowa Code § 85.33(3). *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525 (Iowa 2012). But Spencer identifies no authority under Iowa Code § 85.39 where an Iowa court has considered the reasonableness of the distance to an independent medical examination. The Iowa Workers' Compensation Commission has explained that while travel to treating physicians is limited, the commission "does not limit travel when an employer exercises its right to an independent examination unless long trips would be hazardous to the health of an injured worker." *Sweisberger v. Employer/Defendant*, 1995 WL 17018248, at \*4 (Iowa Workers' Comp. Comm'n May 5, 1995). Spencer cites no Iowa authority to the contrary.

Given the state of the law, Annett had a reasonable basis to believe that it could request Spencer to undergo an examination by the company's chosen physician in Des Moines. Spencer's refusal to submit to the examination made the propriety of the company's denial of healing-period benefits at least fairly debatable. The district court thus properly granted summary judgment for Annett on Spencer's claim of bad-faith failure to pay benefits.

III.

Annett cross-appeals the district court's grant of partial summary judgment for Spencer on Annett's counterclaim for fraud. The district court ruled that Annett was judicially estopped from proceeding against Spencer, because Annett had admitted liability in the proceedings on Spencer's June 2010 alternate care petition. Annett concedes it admitted liability for the injury in the June 2010 proceeding because of the parties' settlement agreement. Annett argues that the district court erred in applying judicial estoppel, however, because it did not give enough weight to changed circumstances during the course of the litigation, and because it applied state law rather than federal law. We review a district court's application of judicial estoppel for abuse of discretion.

Our precedent calls for the application of state law elements of judicial estoppel in diversity cases. *Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 608-09 (8th Cir. 1993). Under Iowa law, judicial estoppel "prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 573 (Iowa 2006) (internal quotation omitted). In *Haverly*, an Iowa case analogous to this one, an employer admitted liability in an earlier proceeding on the employee's petition for alternate care and then directed the employee's medical care. *Id.* at 575. The Iowa court determined that once the employer had admitted liability, it could not later dispute liability for benefits. *Id.*

The court noted, however, that "[t]here might, in some cases, be a significant change in the facts after the admission of liability that could justify a change of position by the employer." *Id.*

Annett is in the same position as the employer in *Haverly*. The company admitted liability for Spencer's injury during its participation in the June 2010 petition proceeding, but now disputes its liability in this litigation. Annett, however, invokes *Haverly*'s possible exception for a "significant change in the facts" that could justify a change in litigating position. The company points to information from Spencer's neighbor that Spencer fabricated the claim of a work-related injury.

Annett's reliance on the neighbor is unavailing, because the company heard from the neighbor in August 2009, and took her recorded statement in March 2010, but continued to admit liability for Spencer's injury through June 2010. Annett says the "significant change in the facts" came later, in October 2010, when the neighbor signed a notarized statement on which the company could rely. But that assertion is belied by the company's change in its litigating position in September 2010—without a notarized statement—to file counterclaims in Spencer's state-court action. Annett had no more information in September 2010 when it alleged fraud by Spencer than it possessed in June 2010 when it admitted liability for Spencer's injury in response to a petition for alternate care. The company simply changed its position without a "significant change in the facts." There was no abuse of discretion in applying judicial estoppel.

On the question of which law to apply, the district court was bound by circuit precedent to apply Iowa law, but we do not think federal law would lead to a different result in any event. Under federal law, judicial estoppel applies when a party—having taken one litigating position and successfully persuaded a court to adopt that position—would derive an unfair advantage or impose an unfair detriment on the opposing party by taking a contrary position in new litigation. *New Hampshire*

-11-

*v. Maine*, 532 U.S. 742, 750-51 (2001).  These considerations are substantially identical to factors that the district court considered under Iowa law, so the choice of state law rather than federal law was immaterial.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed. Annett's motion to strike portions of Spencer's supplemental appendix is denied as moot because the challenged materials are irrelevant to our disposition of the appeal. *See Murff v. Prof'l Med. Ins. Co.*, 97 F.3d 289, 290 n.1 (8th Cir. 1996).

_____