# IN THE SUPREME COURT OF IOWA

No. 18–1092

Filed March 20, 2020

**ANTHONY ROLAND,**

Appellee,

vs.

**ANNETT HOLDINGS, INC.,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Senior Judge.

Employer seeks further review of court of appeals decision that affirmed the district court ruling certifying a class action of workers alleging violations of Iowa Code chapter 85. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT CLASS-CERTIFICATION RULING REVERSED AND CASE REMANDED.**

Sasha L. Monthei of TMC Transportation, Des Moines, for appellant.

Matthew R. Denning, Christopher D. Spaulding, and Nicholas L. Shaull of Spaulding, Berg & Schmidt, P.L.C, Des Moines, and Donald G. Beattie and Nile Hicks of Beattie Law Firm, Des Moines, for appellee.

**WATERMAN, Justice.**

In this appeal, we must determine whether the district court abused its discretion by certifying a class action of employees with pending workers' compensation claims. A trucking company operating nationally required its long-distance drivers to sign a "Memorandum of Understanding" (MOU) providing for short-term light duty and treatment in Des Moines after sustaining a work-related injury. An Alabama employee injured in Indiana successfully challenged the MOU, winning a ruling from the Iowa Workers' Compensation Commission, affirmed by the district court and court of appeals, that determined the MOU as applied to him violated Iowa Code sections 85.18 and 85.27(4) (2017). The ruling allowed him to continue treatment in Alabama.

The driver then filed this civil action on behalf of himself and over forty other "similarly situated" employees who signed the MOU. The representative plaintiff driver alleges bad-faith claims and seeks actual damages including emotional distress as well as punitive damages. The employer, arguing the drivers' claims had to be resolved by the agency, filed a motion to dismiss the civil action for lack of subject matter jurisdiction. The district court denied the motion to dismiss and certified this case as a class action. The employer appealed, and we transferred the case to the court of appeals, which affirmed the class-certification ruling. We granted the employer's application for further review.

For the reasons explained below, we hold the district court abused its discretion by certifying this case as a class action. In our view, the commonality requirement is lacking, individual issues predominate over common ones, and workers' compensation claims must be resolved by the workers' compensation commission before judicial review. Accordingly, we

vacate the decision of the court of appeals and reverse the class-certification ruling.

## I. Background Facts and Proceedings.

Annett Holdings, Inc.[1] is a flatbed trucking company that transports freight across the United States. It is based in Des Moines, Iowa, and has satellite offices in North Carolina and Missouri. On October 24, 2013, Anthony Roland, a resident of Oxford, Alabama, started working for Annett Holdings as an over-the-road truck driver. Many of Annett Holdings employees, like Roland, reside outside of Iowa. As a condition of employment with Annett Holdings, all of its drivers, including Roland, were required to sign their employer's MOU. The MOU outlined work requirements following a work-related injury.

Under the MOU, drivers who sustain a work-related injury must temporarily relocate from their home state to Des Moines for modified work duty.

> Because drivers agree to be away from home as an essential function and an agreed upon term of their employment with Annett Holdings, injured workers are expected to temporarily relocate and perform their modified duty work in Des Moines, Iowa, irrespective of your state of residence. The temporary relocation will include staying away from your home for up to two weeks at a time. By accepting employment with the Company, you acknowledge there is nothing you are aware of which would prevent you from temporarily relocating to Des Moines, Iowa[,] for up to two weeks at a time to perform modified duty work assignments in the event you suffer a work injury.[2]

---

[1]Annett Holdings also does business as TMC Transportation. We will refer to the appellant as Annett Holdings.

[2]In *Neal v. Annett Holdings, Inc.*, we held that the workers' compensation commissioner may consider the distance of available work from an injured employee's home in determining whether the employer has offered suitable work. 814 N.W.2d 512, 524 (Iowa 2012). We affirmed the commissioner's fact-bound decision that the proffered employment was not suitable. *Id.* at 525 (determining the agency ruling was supported by substantial evidence). We noted that "there is no evidence in the record establishing

The MOU further states that Annett Holdings will pay for all travel expenses and lodging associated with the modified work duty. Drivers could return home every two weeks at the employer's expense. The MOU provides, "If ongoing medical care is required by the medical condition of the injured worker, Annett Holdings will coordinate the modified duty work schedule with medical appointments to ensure the least amount of disruption between the two." Should the worker refuse the modified work duty, the MOU provides that Annett Holdings will suspend workers' compensation benefits as permitted under Iowa Code section 85.33(3). Roland signed the MOU two days before he began his employment.

**A. Roland's Injury and Treatment.** On March 4, 2014, Roland sustained a work-related injury to his elbow. Roland received his initial treatment in Indianapolis, Indiana, where the injury occurred, and he was later assigned to modified work duty in Des Moines pursuant to the MOU. After receiving treatment for his injury in Des Moines, Roland grew dissatisfied with his care. He requested to be seen by Dr. John Payne, an orthopedic surgeon in Anniston, Alabama. Annett Holdings approved the request, and Dr. Payne recommended surgery for Roland's elbow, which he performed in Alabama on May 9. Annett Holdings authorized physical therapy for Roland in Anniston for three weeks following the surgery. During his recuperation in Alabama, Roland received physical therapy in the same office building as Dr. Payne, approximately three miles from Roland's home in Oxford. After surgery in Alabama, and pursuant to the MOU, Roland was released to return to modified work duty in Des Moines on May 20. Annett Holdings arranged for Roland to receive physical therapy in Des Moines.

---

that Neal agreed as a condition of employment to any relocation that Annett Holdings might require." *Id.* Annett Holdings then amended its MOU in response to our decision.

As part of his aftercare, Roland had to continue physical therapy for his elbow, and Dr. Payne told him to take extreme care to avoid swelling. Dr. Payne prescribed a cooling machine to use for twenty-one days to prevent swelling in Roland's arm. However, Roland was not permitted to travel by air with the machine and had to travel by car for each trip between Alabama and Iowa. The machine ran on electricity. When he discussed this problem with Annett Holdings, he was told to substitute ice for the cooling machine while driving.

During Roland's time in Des Moines, all but one of his therapy sessions occurred at the Baymont Hotel, where he stayed when assigned to light duty in Des Moines. Annett Holdings authorized Roland to receive physical therapy in Anniston for the weeks of June 9 and June 16 when he returned for post-op care with Dr. Payne. According to Roland, the therapy he received in Alabama was significantly better than what he received in Des Moines.

**B. Roland's Workers' Compensation Claim.** On June 5, Roland petitioned the Iowa Workers' Compensation Commissioner seeking alternative medical care in Alabama. On June 17, while Roland was in Alabama for his follow-up appointment, the parties participated in a telephonic hearing with deputy workers' compensation commissioner Erin Pals. The next day, Deputy Pals granted Roland's petition for alternative care and concluded that the MOU deprived Roland of reasonable medical care. She found that the modification of the prescribed cooling machine to ice was unreasonable and interfered with his authorized treatment, that the Baymont Hotel therapeutic sessions did not amount to reasonable care, and that changing his treatment to Des Moines interfered with Dr. Payne's recommendations. Based on Roland's testimony, she

determined "the therapy in Alabama is more effective and superior to the therapy in Des Moines."

Further, Deputy Pals found the MOU violated Iowa Code section 85.18 by attempting to avoid or eliminate the "reasonable" and "not unduly inconvenient" requirements from section 85.27. Deputy Pals cited the 897-mile trip between Alabama and Iowa for treatment as unreasonable; found the treatment in Iowa interrupted his visitation with his daughter, thereby creating an undue inconvenience; determined the Anniston therapy was superior; and concluded that the therapy offered in Des Moines did not provide reasonable care. For those reasons, Deputy Pals determined that the treatment offered was not reasonably suited to treat Roland's injuries without undue inconvenience and ordered a transfer of Roland's care to Dr. Payne in Anniston, Alabama.

Annett Holdings filed a petition for judicial review and persisted in requiring Roland to travel to Des Moines for modified work duty and medical care. On December 12, the district court affirmed Deputy Pals' decision. The court of appeals affirmed the district court's ruling on February 10, 2016.

**C. Roland's Petition and Motion for Class Certification.** Six days later, Roland filed this civil action against Annett Holdings on behalf of himself and others similarly situated. Roland sought to certify a class of out-of-state Annett Holdings drivers who were required to sign the MOU and abide by its terms or else risk suspension or termination of their benefits. The petition alleged deprivation of statutory rights and other losses, including loss of time traveling to and from the employee's home and Iowa; mental distress associated with the deprivation of the statutory rights; and unnecessary travel, sometimes contrary to the recommendation of the employee's physician. On April 15, Roland

amended his petition to include the allegation that Annett Holdings acted in bad faith because it did not suspend its modified work program following rulings by the agency, district court, and court of appeals. Roland sought compensatory and punitive damages.

**D. Annett Holdings' Resistance to Class Certification.** Annett Holdings argued that the drivers' claims involved too many individualized issues for class adjudication and that there is no private cause of action under Iowa Code section 85.18. Relying on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011), Annett Holdings argued that violation of the same provision of law cannot support class certification when the class members suffered different injuries.

Annett Holdings asserted the MOU is not per se illegal, noting that the court of appeals decision in Roland's individual case limited its holding to his facts by stating, "*As applied in this case*, we, like the district court, conclude the agency did not err in concluding the [MOU] violated section 85.18." (Emphasis added.) Annett Holdings argued that merely requiring modified duty in Iowa is not actionable. It asserted that to prove the MOU violated sections 85.18 or 85.27, or to prove the employer's bad faith, driver-by-driver determinations would be required. Annett Holdings also argued the district court lacked subject matter jurisdiction over the workers' compensation claims of the drivers who had not exhausted their administrative remedies with the agency.

**E. The District Court Rulings.** Annett Holdings filed a motion to dismiss for lack of subject matter jurisdiction, which the district court denied. Annett Holdings then applied for an interlocutory appeal, which we denied on December 13. A dispute arose over class-related discovery when Annett Holdings refused to answer some of Roland's discovery.

Roland moved to compel responses and moved to certify the case as a class action.

The district court granted class certification. The court reasoned each class member suffered the same injury under the MOU when they were required to temporarily relocate to Iowa for modified work duty. Noting that the nature and amount of damages may differ between class members, it determined the overall central issue was whether the MOU violated section 85.18.

Regarding Roland's bad-faith claim, the district court concluded each class member would have the same injury if the employee did not travel to Iowa for the modified duty and/or if the medical care was unreasonable or inconvenient by being provided in Iowa, hundreds of miles away from their homes. It determined that the commonality prong was met through the same factual basis for the claims. The district court concluded that a class action was the most appropriate means for the fair and efficient adjudication of the controversy in this case.

**F. The Court of Appeals Decision Affirming Class Certification.** Annett Holdings appealed, and we transferred the case to the court of appeals. On July 24, 2019, the court of appeals affirmed, holding that the district court did not abuse its discretion in finding a common question of law or facts among all members of the purported class and in finding a unified proceeding would be a fair and efficient way to decide the common claims of class members. Neither the petition nor the district court's order had actually defined the class. The court of appeals explained that the class would consist of drivers "who signed the same MOU" and "had workers' compensation claims and were compelled to travel to Des Moines for the light-duty work program."

Annett Holdings applied for further review, which we granted.

**II. Standard of Review.**

"We review a district court's class certification ruling for abuse of discretion." *Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 113 (Iowa 2017). "The district court abuses its discretion when its 'grounds for certifying a class action are clearly unreasonable.'" *Id.* (quoting *Legg v. W. Bank*, 873 N.W.2d 756, 758 (Iowa 2016)). Challenges to the court's subject matter jurisdiction to hear workers' compensation claims "may be made at any time" and are legal issues reviewed for correction of errors at law. *Kloster v. Hormel Foods Corp.*, 612 N.W.2d 772, 773–74 (Iowa 2000).

**III. Analysis.**

We must decide whether the district court abused its discretion by certifying this class action. In our view, the district court abused its discretion because the commonality requirement is lacking, individual issues predominate over common claims, and class adjudication of workers' compensation benefits conflicts with Iowa Code chapter 85. We begin with the requirements for class certification.

**A. The District Court Abused Its Discretion by Certifying the Class Action.** "Iowa Rules of Civil Procedure 1.261 through 1.263 govern class actions." *Freeman*, 895 N.W.2d at 114. Class certification is appropriate if the court finds all of the following:

> *a.* The requirements of rule 1.261 have been satisfied.
> *b.* A class action should be permitted for the fair and efficient adjudication of the controversy.
> *c.* The representative parties fairly and adequately will protect the interests of the class.

Iowa R. Civ. P. 1.262(2). Rule 1.261 governs the commencement of a class action and requires a class to be "so numerous . . . that joinder of all members . . . is impracticable" and a "question of law or fact [be] common to the class." Iowa R. Civ. P. 1.261(1)–(2). "Our class-action rules are

remedial in nature and should be liberally construed to favor . . . maintain[ing] class actions." *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005).

Annett Holdings does not contest numerosity. *See Legg*, 873 N.W.2d at 759 (noting forty class members is sufficient to show joinder is impractical). We focus on the primary fighting issue—Annett Holdings' argument that the district court erred in finding that common questions predominate over individual questions such that class certification should be permitted for the fair and efficient adjudication of the controversy. We begin with the commonality requirement.

The MOU provides a common denominator to the claims of Roland and the class. But we disagree with the district court and court of appeals that the validity of the MOU provides the requisite "question of law or fact common to the class" for class certification. Iowa R. Civ. P. 1.261(2). We have never held such MOUs are per se illegal. The court of appeals held that "as applied" Roland's MOU violated chapter 85.

In *Neal v. Annett Holdings, Inc.*, we recognized that "[t]he question of whether an employer offered suitable work is ordinarily a fact issue." 814 N.W.2d 512, 518 (Iowa 2012). Tim Neal was a driver who resided with his wife and three children in eastern Illinois near the Indiana border and 387 miles from Des Moines. *Id.* at 517. He was injured working in Michigan and refused his employer's light-duty position in Des Moines, resulting in suspension of his workers' compensation benefits. *Id.* Following an evidentiary hearing, a deputy commissioner determined "Annett Holdings properly suspended temporary disability benefits because Neal refused to accept 'suitable work' as defined in Iowa Code section 85.33(3)." *Id.* The commissioner reversed on intra-agency appeal, and the district court

reversed the commissioner, ruling that the Des Moines light-duty assignment was suitable. *Id.*

In *Neal,* our court reversed the district court because we determined that "substantial evidence supports the commissioner's findings of fact." *Id.* at 525. We expressly "acknowledge[d] that the evidence in the record could have led a reasonable fact finder to come to a conclusion different than that reached by the commission." *Id.* at 524–25. We noted the lack of any evidence "that Neal agreed as a condition of [his] employment to any relocation that Annett Holdings might require." *Id.* at 525.

We hold for class-certification purposes, the validity of the MOU must be determined driver-by-driver based on their individual factual circumstances. For example, drivers living in Omaha, Nebraska, or Rock Island, Illinois, on the Iowa border present different circumstances than those living in Alabama or Mississippi. The district court erred in finding Roland satisfied the commonality requirement.

Even if the requirements under rule 1.262(2)(*a*), i.e., rules 1.261(1) (numerosity) and 1.261(2) (commonality), are met, we must turn to rule 1.262(2)(*b*) and consider the thirteen factors under rule 1.263 to determine if "the class action should be permitted for the fair and efficient adjudication of the controversy." Iowa Rs. Civ. P. 1.262(2)(*b*), .263(1).[3] In *Comes,* we recognized,

---

[3]*a.* Whether a joint or common interest exists among members of the class.

*b.* Whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class.

*c.* Whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other

In most cases some of the thirteen factors [regarding the fair-and-efficient-administration-of-justice test] will weigh against certification and some will weigh in favor. It is for the trial court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. Thus, even if [defendant] is correct in its assertion four of the factors weigh against certification, that does not preclude the court from certifying the class action if, it its opinion, those factors are outweighed by other factors supporting certification.

696 N.W.2d at 322 (alterations in original) (quoting *Howe v. Microsoft Corp.*, 656 N.W.2d 285, 289 (N.D. 2003)).

---

members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

*d.* Whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

*e.* Whether common questions of law or fact predominate over any questions affecting only individual members.

*f.* Whether other means of adjudicating the claims and defenses are impracticable or inefficient.

*g.* Whether a class action offers the most appropriate means of adjudicating the claims and defenses.

*h.* Whether members who are not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions.

*i.* Whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding.

*j.* Whether it is desirable to bring the class action in another forum.

*k.* Whether management of the class action poses unusual difficulties.

*l.* Whether any conflict of laws issues involved pose unusual difficulties.

*m.* Whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.

Iowa R. Civ. P. 1.263(1)(*a*)–(*m*).

The factors outlined in 1.263 "center on two broad considerations: 'achieving judicial economy by encouraging class litigation while preserving, as much as possible, the right of litigants—both those presently in court and those who are only potential litigants.' " *Freeman*, 895 N.W.2d at 115 (quoting *Vos v. Farm Bureau Life Ins.*, 667 N.W.2d 36, 45 (Iowa 2003)). The court must find that the factors in Iowa Rule of Civil Procedure 1.263(2) are met to determine that the representative parties fairly and adequately represent the class. Iowa Rs. Civ. P. 1.262(2)(*c*),[4] .263(2).

We require that "common questions of law or fact predominate over any questions affecting only individual members." *Id.* r. 1.263(1)(*e*). We have held this is "a fundamental requirement for class certification." *Freeman*, 895 N.W.2d at 109. Group or class adjudication makes little sense if individual issues predominate. "Inherent in our inquiry into the predomination issue is the recognition [that] the class action device is appropriate only where class members have common complaints that can be presented by designated representatives in the unified proceeding." *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741, 744 (Iowa 1985). This inquiry is fairly complex. *Id.*

We disagree with the district court's determination that common questions of both law and fact predominate over questions affecting only individual members. In determining if the MOU is a device to deprive members of their statutory rights and benefits under chapter 85, the focus is on the individual circumstances of each employee. *See Neal*, 814 N.W.2d at 519–25 (applying fact-sensitive analysis). Roland has not

---

[4]Annett Holdings does not dispute this requirement.

shown that he can prove that each purported class member has suffered the same deprivation of statutory rights or the same injury.

*As applied to* Roland, the court of appeals on judicial review affirmed the commissioner's determination that the MOU violated chapter 85. That holding was fact-specific. Roland was required under the MOU to drive nearly 900 miles from his Alabama home to Iowa. The travel interfered with medical treatment, specifically with his use of the electronic cooling machine prescribed by his Alabama surgeon and his physical therapy three miles from his home, and with his visitation with his daughter. Based on those facts, the court of appeals affirmed the agency ruling that Annett Holdings used the MOU as a device to relieve the employer of liability for "reasonable"[5] treatment without "undue inconvenience." Iowa Code § 85.27(4).[6]

The question of the MOU's legality cannot be resolved for all drivers in a single adjudication. These inquiries would create mini trials within the larger class action, which is unsuitable. Facts will differ regarding distance traveled, types of injury, care received, and other factors that may go into the analysis of undue inconvenience, and proof on these issues cannot be established without individualized evidence. Some class members may not have required therapy. Some class members may have received their therapy at home even while performing light-duty work in Des Moines. Some class members may have received perfectly satisfactory

---

[5]The definition of "reasonable" is "[f]air, proper, or moderate *under the circumstances.*" *Reasonable, Black's Law Dictionary* (11th ed. 2019) (emphasis added).

[6]Iowa Code section 85.27(4) reads in pertinent part,

> For purposes of this section, the employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care. . . . The treatment must be offered promptly and be reasonably suited to treat the injury without undue inconvenience to the employee.

or even superior therapy in Des Moines. Courts have routinely found that class certification is inappropriate in such cases when the theory of liability cannot be established with generalized evidence by the representative on behalf of the entire class. *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767–68 (5th Cir. 2020) (decertifying class action of group of debtors who received the same allegedly threatening letter because individual issues such as intent to sue defeated commonality for liability under the Fair Debt Collection Practices Act); *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191–92, 1195 (11th Cir. 2009) (affirming denial of class certification and concluding the predominance requirement was not met by hourly employees alleging failure to pay "gap periods" because no common proof of uncompensated time existed and individualized inquiries would be required); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1267 (11th Cir. 2004) (holding the district court abused its discretion in certifying doctors' breach of contract claim against health maintenance organizations when individualized issues predominated, notwithstanding contract claims common to the class), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661, 128 S. Ct. 2131, 2145 (2008); *In re FedEx Ground Package Sys., Inc.*, 662 F. Supp. 2d 1069, 1092 (N.D. Ind. 2009) (denying certification of class of delivery drivers seeking recovery for fines illegally deducted from their wages because the issues could not be resolved systematically but, rather, depended on each driver's conduct).

*Freeman* was a quite different case. *Freeman* was a nuisance case brought by residents living near a corn wet-milling plant. 895 N.W.2d at 108–09. Liability for nuisance would be based on objective, classwide standards. *Id.* at 121–22. The class-action trial involving the class representatives would establish whether there was a nuisance as to all

class members, and a formula would be presented to the jury to allow computation of damages for each class member. *Id.* at 124–25. In short, the class-action trial would potentially determine liability and damages for the class as a whole.

Here, by contrast, in the current posture, a class-action trial would apparently only decide Roland's individual bad-faith claim. Assume that Roland prevailed at trial in proving bad faith. It is difficult to see how this finding could be used to establish liability on the part of Annett Holdings to any other actual class member without a separate trial which considered that member's circumstances.

We hold that the individualized issues predominate over common questions and reverse the class-certification ruling on that ground as well.

**B. The Class Members' Failure to Exhaust Administrative Remedies.** Another reason class certification is inappropriate is that, apart from Roland, there is no evidence that any of the class members exhausted their administrative remedies. The workers' compensation commissioner has exclusive jurisdiction over alleged violations of Iowa Code chapter 85's requirements for alternate medical care, and the district court lacks subject matter jurisdiction over a civil action alleging statutory violations by an employee who failed to exhaust his administrative remedies. *See Kloster*, 612 N.W.2d at 774–75; *Thornton v. Am. Interstate Ins.*, 897 N.W.2d 445, 472–73 (Iowa 2017) ("A district court would ordinarily have no subject matter jurisdiction over a claim that an employee is entitled to workers' compensation benefits." (quoting *Kiner v. Reliance Ins.*, 463 N.W.2d 9, 12 (Iowa 1990))). Allowing group adjudication of workers' compensation claims in district court in lieu of individual agency adjudications flouts the Iowa legislature's "grand bargain" creating

the workers' compensation system as described in *Clark v. Insurance Co. State of Pennsylvania*:

> At the turn of the century, states began adopting workers' compensation systems to compensate workers for workplace injuries. These workers' compensation systems were said to be the product of a legislatively crafted "grand bargain" or "quid pro quo." Workers gave up their common law right to seek a full range of compensatory and punitive damages available at common law and instead became eligible for limited statutorily-based compensation. In return, however, the employee was no longer required to show the employer's fault, but only needed to show that the injury arose in the course of employment.

927 N.W.2d 180, 187 (Iowa 2019) (citations omitted) (quoting Emily A. Spieler, *(Re)assessing the Grand Bargain: Compensation for Work Injuries in the United States, 1900–2017*, 69 Rutgers L. Rev. 891, 893 & n.4 (2017)).

Chapter 85 requires employees alleging failure to provide alternative medical care to first adjudicate their claims at the agency before going to court. *Kloster*, 612 N.W.2d at 774–75. Roland did so; there is no indication that the other class members have exhausted their administrative remedies.

This requirement is demonstrated in *Spencer v. Annett Holdings, Inc.* in which the Eighth Circuit, applying Iowa law, affirmed the summary judgment ruling that the employee failed to exhaust his workers' compensation claim through the administrative process before seeking judicial review. 757 F.3d 790, 795 (8th Cir. 2014). Douglas Spencer, a truck driver employed by Annett Holdings, sued claiming that it denied in bad faith medical care for his knee injury. *Id.* The Eighth Circuit determined the claim was actually one of "dissatisfaction with care" that must be exhausted through the administrative process by petitioning the workers' compensation commissioner for alternate medical care. *Id.* at 795–96. The Eighth Circuit held "[t]he district court correctly ruled that

Iowa law required Spencer to exhaust this claim through the exclusive administrative process." *Id.* at 795.

In our view, the district court abused its discretion by certifying this class-action circumventing each driver's exhaustion requirement. Indeed, the district court lacked subject matter jurisdiction over the claims of class members who had not adjudicated their claims before the commissioner. Iowa Rule of Civil Procedure 1.263(1)(*f*) obligates the court to consider "[w]hether other means of adjudicating the claims and defenses are impracticable or inefficient." Rule 1.263(1)(*g*) requires consideration of "[w]hether a class action offers the most appropriate means of adjudicating the claims and defenses." Iowa R. Civ. P. 1.263(1)(*g*). Finally, rule 1.263(1)(*j*) requires the court to consider "[w]hether it is desirable to bring the class action in another forum." *Id.* r. 1.263(1)(*j*). In this case, the required forum is the workers' compensation commission.

Other courts have held class actions are inappropriate to adjudicate groups of workers' compensation claims. In *Davis v. Washington State Department of Labor & Industries*, the Washington Court of Appeals held that the trial court lacked subject matter jurisdiction over a class action of workers' compensation claimants alleging that the department had improperly calculated settlements to reimburse to the workers' compensation fund. 245 P.3d 253, 254 (Wash. Ct. App. 2011). The plaintiffs filed the lawsuit before appealing within the administrative system and obtaining a final board decision; the *Davis* court held the plaintiffs failed to invoke the district court's appellate jurisdiction. *Id.* at 255.

In *Brendley v. Pennsylvania Department of Labor & Industry*, the Commonwealth Court of Pennsylvania held that it lacked subject matter jurisdiction over a former employee's declaratory judgment action and the

former employee could not pursue a class-action workers' compensation claim petition. 926 A.2d 1276, 1277 (Pa. Commw. Ct. 2007). The state's workers' compensation act is the exclusive means by which an employee can recover against an employer for a work-related injury, and such claims are initially assigned to a workers' compensation judge. *Id.* at 1282. The plaintiff "sought to pursue a 'class action claim petition' despite the fact that neither the Act nor its attendant regulations expressly permit class action suits." *Id.*

The *Brendley* court acknowledged that no Pennsylvania case specifically addresses the propriety of class actions in workers' compensation proceedings and stated it "generally holds class actions are unauthorized in the administrative setting." *Id.* The court rejected the class-action workers' compensation claim because "absent express authority permitting the filing of a 'class action claim petition,' [the plaintiff] should properly file an individual claim petition" with the workers' compensation judge. *Id.* at 1283.

We reach the same conclusion. Nothing in Iowa Code chapter 85 or chapter 17A authorizes class actions for workers' compensation claims that require exhaustion of administrative remedies.

The district court does have subject matter jurisdiction over Roland's common law bad-faith tort claim. *Thornton*, 897 N.W.2d at 473 ("[C]ommon law bad-faith tort claims do not fall within the commissioner's exclusive jurisdiction."). But for the reasons explained in division III.A, class certification is inappropriate for the drivers' common law bad-faith claims because individual issues predominate over common questions. *See Spencer*, 757 F.3d at 797 (affirming summary judgment dismissing bad-faith claim because employer had a reasonable basis to require the employee to undergo a medical examination in Des Moines).

**IV. Disposition.**

For these reasons, we vacate the decision of the court of appeals and reverse the district court's order certifying this class action. We remand this case for an order decertifying the class and further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT CLASS-CERTIFICATION RULING REVERSED AND CASE REMANDED.**

All justices concur except Appel, J., who dissents, and Oxley, J., who takes no part.

#18–1092, *Roland v. Annett Holdings, Inc.*

**APPEL, Justice (dissenting).**

I respectfully dissent. In this case, the majority concludes that the four judges who previously approved the class-action certification in this case did not recognize that certification was clearly unreasonable. That is not impossible, of course, but it seems unlikely. If the applicable Iowa law is applied, the decision of the district court should be affirmed given the broad discretionary authority vested in the district court and the availability of other safety-net remedies as the litigation progresses.

**I. Factual and Procedural Background.**

**A. Prior Litigation over Temporary Relocation of Injured Workers.** Annett Holdings is an over-the-road trucking company with a nationwide business. The question in this case involves a challenge to a memorandum of understanding (MOU) that requires injured Annett Holdings employees to relocate to Des Moines for light duty. In order to understand this case, however, we must understand the prior history of litigation over the issue. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512 (Iowa 2012).

In 2007, Annett Holdings employee Tim Neal was injured on the job. *Id.* at 516–17. Annett Holdings offered Neal a temporary light-duty job that would require him to relocate to Des Moines. *Id.* at 517. Neal, however, lived 387 miles from Des Moines and declined the temporary employment. *Id.* When the injured employee declined the temporary employment, Annett Holdings suspended his workers' compensation benefits. *Id.* The employee filed a workers compensation claim, and the question before the deputy commissioner was whether Annett Holdings offered Neal "suitable work" under Iowa Code section 85.33. *Id.* This

provision authorizes an employer to suspend workers' compensation benefits if an injured worker refuses "suitable work." *Id.*

The deputy commissioner held Annett Holdings properly suspended the temporary disability benefits because of his refusal to accept suitable work offered by the employer. *Id.* On appeal, however, the commissioner modified the deputy's decision. According to the commissioner, Annett Holdings "failed to offer 'suitable work' because the job was located a great distance from Neal's residence." *Id.* On Annett Holdings' appeal, the district court reversed, concluding that the employment offered by Annett Holdings was "suitable work" because it was "consistent with the employee's disability." *Id.* (quoting Iowa Code § 85.33(3) (2009)).

Neal appealed the district court decision. On appeal, we concluded that the term "suitable work" included geographic location as a factor to be considered in determining whether an employer has offered an injured employee suitable work. *Id.* at 524. Although we found that on the record before us, a reasonable commissioner could have come to a different conclusion, we affirmed the commissioner on the ground that the decision was supported by substantial evidence. *Id.* at 524–25.

In the discussion of our holding, we observed that while Neal was an over-the-road truck driver and was thus absent from home over extended periods of time, he ordinarily was able to spent each weekend at home with his wife and three children and occasionally returned home during the week. *Id.* at 525. We agreed with the observation of the commissioner that "[b]eing away from the support of your wife and family, especially while recovering from a serious work injury, is not an insignificant matter." *Id.*

We then added two observations. First, we observed that "there [was] no evidence in the record establishing that Neal agreed as a condition

of employment to any relocation that Annett Holdings might require." *Id.* In support of that interpretation, we cited *Serwetnyk v. USAir, Inc.*, 671 N.Y.S.2d 537, 538 (App. Div. 1998), which found that a claimant did voluntarily remove himself from the labor market when the claimant was fully aware of the relocation policy and the claimant's reasons for refusing relocation were unrelated to the claimant's disability. *Neal*, 814 N.W.2d at 525. Second, we cited *Litzinger v. Workers' Compensation Appeal Board* (*Builders Transport*), 731 A.2d 258, 262–63 (Pa. Commw. Ct. 1999), which found that light-duty work offered to a former over-the-road trucker was "totally unreasonable," even with the employer offering temporary housing, when the work was located 116 miles away from the claimant's residence. *Neal*, 814 N.W.2d at 525.

**B. Litigation Arising from Alternate Medical Care Petition.**

1. *The modified MOU.* After we decided *Neal*, Annett Holdings developed a modified MOU and consent form that employees were required to sign. The MOU mandated that Annett Holdings employees injured on the job would have to travel to Des Moines for light-duty work if they sustained a work-related injury. The MOU declared that Iowa law allowed Annett Holdings to suspend workers' compensation benefits to an injured worker "if the injured worker fails to accept and work in the modified duty position offered by Annett." The MOU provided that Annett Holdings would "coordinate the modified duty work schedule with medical appointments to ensure the least amount of disruption between the two." The MOU stated that Des Moines, Iowa, has "world class facilities and medical professional available, and is an ideal location for ongoing medical care."

2. *Petition for alternate medical care.* This case stems from a work-related elbow injury and from subsequent related medical care. Roland

and his employer ultimately disagreed on medical care issues, leading Roland to file a petition for alternate medical care. According to the order of the deputy commissioner, Roland needed surgery on his elbow, which was approved by the employer and performed by an authorized treating physician on May 9, 2014. Roland was released to light-duty work on May 20 following the surgery and returned to Des Moines. The authorized treating physician prescribed a cooling machine to keep his arm from swelling, but Roland could not take in on an airplane and could not use it in an automobile because it required electricity. Annett Holdings suggested that he simply use ice while driving to Des Moines.

In Des Moines, Roland had one physical therapy session at Work Systems Rehab & Fitness, but the other therapy sessions took place at the Baymont Hotel. Roland claimed that, while there was some weight equipment at the hotel, there was no therapy equipment. When he used a heating pad on his arm, Roland testified that he had to sit on the floor because there were no chairs.

At the time of the hearing, Roland was in Anniston. He testified that the physical therapy available to him there included numerous pieces of therapy equipment. Roland testified that the therapy sessions in Des Moines were thirty minutes long while the Anniston sessions lasted sixty to ninety minutes. Roland testified that the treatments and equipment in Alabama really helped him, that there was marked improvement in what he was able to do after therapy in Anniston, and that the swelling in his arm was reduced.

The deputy commissioner concluded, based on Roland's testimony, that the therapy in Alabama was superior to the therapy offered in Des Moines. The deputy commissioner also noted that the Des Moines treatment interfered with Roland's ability to see his daughter who,

according to a divorce decree, was available for visitation at limited times that often conflicted with his required presence in Des Moines. The deputy commissioner further noted the distance between Anniston and Des Moines.

Annett Holdings defended its actions by citing the MOU. During the hearing, Roland did not dispute that he signed the MOU but stated that he did not remember the particular document due to the volume of documents he signed at the time. But the deputy commissioner concluded that the MOU does "not comply with Iowa Code [s]ection 85.18[,] which prohibits any contract to relieve the employer from any liability created by chapter 85."

According to the deputy commissioner, under Iowa Code section 85.27, the employer "is liable to provide reasonable treatment which must be reasonably suited to treat the injury without undue inconvenience to the employee." The deputy commissioner concluded that the MOU "appears to be an attempt to either avoid or eliminate both the 'reasonable' and 'undue inconvenience' clauses in this provision." The deputy commissioner wrote that any use of any device as an attempt to relieve the employer of liability under workers' compensation law is prohibited by Iowa Code section 85.18.

For the above reasons, the deputy commissioner granted Roland's application for alternate care.

3. *District court ruling on alternate medical care.* Annett Holdings appealed the deputy commissioner to the district court. The district court first addressed the legal question of whether the MOU violated Iowa Code section 85.18 by way of violating Iowa Code section 85.27 dealing with alternate medical care. The district court concluded that the MOU was

unlawful as claimed by Roland, citing *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560–61 (Iowa 1988). In that case, we stated,

> We deem [Iowa Code section 85.18] to be a clear expression that it is the public policy of this state that an employee's right to seek the compensation which is granted by law for work-related injuries should not be interfered with regardless of the terms of the contract of hire.

*Id.* Relying on *Springer* and the language of the statute, the district court held that the deputy commissioner correctly concluded that the MOU is a contract that illegally attempts to release the employer of liability to provide reasonable medical care without undue inconvenience under section 85.27.

Having found that Annett Holdings could not rely upon the MOU to justify its actions regarding medical care, the district court then turned to the question of whether the deputy commissioner's ruling that Annett Holdings violated Iowa Code section 85.27 was supported by substantial evidence. After a "fairly intensive" review of the record, the district court concluded that the deputy commissioner's granting of the petition should be affirmed.

4. *Court of appeals ruling on alternate medical care.* Annett Holdings appealed the decision of the district court. We transferred the case to the court of appeals. The court of appeals affirmed the district court. On the question of whether the MOU violated Iowa Code section 85.18, the court of appeals concluded, "As applied in this case, we, like the district court, conclude the agency did not err in concluding the memorandum of understanding violated section 85.18." *Annett Holdings, Inc. v. Roland*, No. 15-0043, 2016 WL 541265, at *6 (Iowa Ct. App. Feb. 10, 2016).

## C. Roland Bad-Faith and Class-Action Petition.

1. *Allegations in amended petition.* After the decision of the court of appeals in the alternate medical care matter, Roland filed a petition in district court which was subsequently amended. In the amended petition, Roland recited the history of his alternate medical care proceeding. He alleged that after Judge Gamble ruled in his favor, Annett Holdings "still compelled Plaintiff to travel to Des Moines, Iowa to perform light-duty work and receive medical care for his work-related injury."

Roland claimed that the MOU deprived him, as well as other similarly situated persons, "of healing period benefits, permanent partial disability benefits, medical benefits, and/or reasonable and necessary medical care." Roland further alleged that he, along with other similarly situated persons, suffered pain and suffering and harm by loss of time traveling to and from their homes to Des Moines. Based on the alleged facts, Roland contended that Annett Holdings lacked a reasonable basis for denying or delaying benefits and acted in bad faith, thereby justifying an award of punitive damages.

In addition to his individual claim, Roland sought certification of a class. Roland asserted that, notwithstanding Iowa Code section 85.18, Annett Holdings continues "to enforce the MOU against all of its employees who had been compelled to sign it." In support of its request that the court certify a class action, Roland alleged (1) a common interest amongst all members of the class; (2) members of the class are so numerous as to justify a class action; (3) adjudication of separate actions by or against individual members of the class would create a risk of inconsistent or varying judgments; (4) separate adjudications as a practical matter may or would be dispositive of the interests of other members; (5) common questions of law and fact predominate over any questions affecting only

individual members; (6) any other means of adjudicating the claims of each member of the class would be impractical and/or inefficient; (7) class action offers the most appropriate means of adjudicating the claims and defenses of class members and the defendant; (8) the action has not been subject to a prior class action; (9) the district court is the best forum for this class action and management of the class does not pose any unusual difficulties; (10) there are no conflicts of law problems that would preclude the case from being certified; and (11) plaintiff, as a representative party, will fairly, capably, and adequately protect the interest of the class.

Roland asked that the court certify the class; award plaintiff and all similarly situated members of the class fair, just, reasonable, and adequate compensation; award punitive and/or exemplary damages; and order such other and further relief as the court deems just and equitable.

2. *District court proceedings.* In November 2017, Roland filed a motion to compel discovery. Annett Holdings responded with a combined motion to resist Roland's motion to compel, to limit discovery pending class certification, and to decertify any class action.

After a hearing, the district court entered an order providing that the matter would be certified as a class action after Roland filed certain documentation. After Roland filed the necessary documentation, the district court entered an order certifying the matter as a class action. Annett Holdings appealed.

3. *Ruling of the court of appeals.* We transferred the appeal to the court of appeals. The court of appeals unanimously affirmed the class–action certification of the district court. The court of appeals reviewed our cases, noting that "[o]ur class-action rules are remedial in nature and should be liberally construed to favor the maintenance of class actions." *Roland v. Annett Holdings, Inc.,* No. 18-1092, 2019 WL 3317353, at *2

(Iowa Ct. App. July 24, 2019) (quoting *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005)). The court of appeals noted that the district court ruling on class certification should be affirmed "if the district court 'weigh[ed] and consider[ed] the factors and [came] to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy.' " *Id.* (alterations in original) (quoting *Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 113–14 (Iowa 2017)). At this stage, the court of appeals emphasized that the burden on Roland was "light" in establishing the elements of class certifications. *Id.* (quoting *Freeman*, 895 N.W.2d at 114).

The court of appeals noted that Annett Holdings challenged the second requirement of a class action under Iowa Rule of Civil Procedure 1.262, namely, whether a class action would promote a fair and efficient adjudication of the controversy. *Id.* at *3. In order to determine whether a class action would promote a fair and efficient adjudication of the controversy, the court of appeals noted that rule 1.263 provides thirteen factors to consider. *Id.* The court of appeals noted that Annett Holdings disputes just one of the thirteen factors: "[w]hether common questions of law or fact predominate over any questions affecting only individual members." *Id.* (quoting Iowa R. Civ. P. 1.263(1)(*e*)).

The court of appeals addressed Annett Holdings argument that Roland did not identity a common question of law or fact. The court of appeals noted that the district court reasoned that "[t]he determination of whether the MOU violated statutory rights is common to all proposed class members." *Id.* The court of appeals, citing *Freeman*, recognized that the nature and amount of damages may vary among class members, but that the plaintiff's theory presents a common nucleus of operative fact sufficient to support a class action. *Id.* at *5.

The court of appeals declared that Roland had identified a legal grievance shared by the members of the prospective class—the company's use of the MOU to deny benefits to injured workers in violation of Iowa Code section 85.18. *Id.* at *6. The court of appeals noted that the push of Annett Holdings to show not all members of the class suffered the same injury "takes us down the wrong path." *Id.* at *5. According to the court of appeals, in looking for common questions of law and fact, the courts rarely inquire into the merits of individual claims. *Id.* (citing *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741, 745 (Iowa 1985) ("It is not necessary that the individual claims be carbon copies of each other.")). The court of appeals thus found that there was a common question of law or fact among all members of the purported class.

The court of appeals next addressed the question of whether the class action should be defeated because individual questions predominate over those common to the class. *Id.* The court of appeals noted at the outset that even if Annett Holding is correct in its assertion that the predominance factor weights against certification, that does not preclude affirming the certification is other factors weigh heavily in favor in support of allowing the class action to go forward. *Id.* at *5 n.6.

In any event, the court of appeals noted that the legality of the MOU is central to each class member's claim and amounts to "the elephant in the room." *Id.* at *6. In addition, with respect to Roland's bad-faith claim, the court of appeals reasoned that all the evidence funnels into the common bad-faith elements that Annett Holdings was using the MOU to deny workers compensation benefits without a reasonable basis. *Id.*

The court of appeals also considered the applicability of *Vos v. Farm Bureau Life Insurance*, 667 N.W.2d 36 (Iowa 2003). *Roland*, 2019 WL 3317353, at *6. In *Vos*, plaintiff policyholders claimed that Farm

Bureau agents engaged in a pattern of deceptive practices. 667 N.W.2d at 38. After two years of discovery, however, the district court decertified the class. *Id.* at 41, 44. We upheld the class decertification, finding no claims of companywide deception and, without a universal practice, the individual issues would predominate over those common to the group. *Id.* at 54–55.

In this case, however, the court of appeals observed that Roland has a generally applicable theory—namely, the illegal use of the MOU to attempt to defeat workers' compensation rights. *Roland*, 2019 WL 3317353, at *6. Further, the court of appeals noted that in *Vos*, the district court decertified the class. *Id.* The *Vos* court's decertification was subject to review for abuse of discretion. *Id.* Here, at this early stage of the litigation, there is no district court order decertifying the class subject to highly deferential review on appeal.

In sum, the court of appeals concluded that the district court did not abuse its discretion in certifying the class in this case. *Id.* at *7.

**II. Iowa Class-Actions Framework.**

**A. Iowa Departs from the Federal Model.** At the outset, it is critically important to recognize that the Iowa rules related to class actions depart materially from the Federal Rules. Therefore, federal caselaw is of limited utility in considering state class actions. Here is the backstory.

"Prior to July 1, 1980, the Iowa rule regarding class actions was essentially the same as the old Rule 23(a) of the Federal Rules of Civil Procedure," before the "substantial revision in 1966 to the federal rule." *American Bar Association Survey of State Class Action Law: Iowa* Westlaw SSCLASSACT IA (database updated Feb. 2020). "In 1980, Iowa adopted the provisions of the Uniform Class Actions Act [(UCAA)], which had been

approved in 1976 by the National Conference of Commissioners of Uniform State Laws." *Id.*

University of Iowa Professor Allen D. Vestal chaired the committee that was appointed to draft the UCAA. Allen D. Vestal et al., *Uniform Class Actions,* 63 A.B.A. J. 837, 838 (1977) [hereinafter Vestal]. The project was prompted by United States Supreme Court decisions that limited the availability of class actions in federal court. *See generally Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S. Ct. 2140 (1974) (finding that common interests must predominate over individual interests in class actions and creating more stringent requirements regarding notice to members of class); *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 94 S. Ct. 505 (1973) (requiring each class member in a diversity action to satisfy the jurisdictional amount for federal diversity actions). According to the prefatory note to the UCAA, "[m]ore classes with claims will be seeking redress in state court because the federal courts have severely restricted the availability of class actions in their forum." Model Class Actions Act, Prefatory Note, 12 U.L.A. 94 (2008).[7] Professor Vestal himself stated that the UCAA was a response to *Zahn* and *Eisen* which "severely limited the availability of class actions in federal court." Vestal, 63 A.B.A. J. at 837. As noted by a contemporary observer, although the UCAA has many similarities to the federal rule, "its most outstanding features are its differences from the federal rule." Irving Scher, *Opening State Courts to Class Actions: The Uniform Class Actions Act,* 32 Bus. Law. 75, 75 (1976).

For instance, while Federal Rule 23(a)(3) requires "typicality," a requirement that led a number for court to apply Rule 23 more restrictively, no such requirement is contained in the UCAA. *See* Richard

---

[7]The Uniform Class Actions Act was officially changed to a Model Act in 1987. Model Class Actions Act, Historical Note, 12 U.L.A. at 93.

Alpert, *The Uniform Class Actions Act: Some Promise and Some Problems,* 16 Harv. J. on Legis. 583, 593 & n.63 (1979).

The elimination of the typicality requirement was contemporaneously praised as eliminating a barrier to class actions. As noted by Professor Alpert,

> Requiring class interests to be more closely aligned could easily inhibit broad equitable relief; particularly in civil rights class actions in which the same claims often are presented in varying factual circumstances, requiring near identity of interests would virtually foreclose bringing of the suit.

*Id.* at 595. For example, Federal Rule 23(b)(3) states that a class action is prohibited unless the court finds it is "superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). On the other hand, the UCAA allows the court to certify a class action when it appears to provide a "fair and efficient adjudication of the controversy." Model Class Actions Act § 2(b), 12 U.L.A. at 98.

The UCAA departed from Federal Rule 23(b)(3)'s requirement that a class action may not be certified unless the court finds that common questions of law or fact "predominate" over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). Under the UCAA, this requirement is reduced to being only one of thirteen criteria for the court to determine a class action. Model Class Actions Act § 3(a)(5), 12 U.L.A. at 100.

All this does not mean that federal authorities may not present persuasive reasoning, particularly where Federal Rule 23 is closely parallel to the Iowa class-actions rules. *Vos*, 667 N.W.2d at 44 ("Iowa Rules of Civil Procedure 1.261 to 1.263, the rules regarding class actions, closely resemble Federal Rule of Civil Procedure 23. . . . Therefore, we may rely on federal authorities construing similar provisions of Federal Rule of Civil

Procedure 23.") On the other hand, the differences between the applicable Iowa Rules of Civil Procedure and Federal Rule of Civil Procedure 23 represent deliberate choices that must be honored as well.

Further, it is important to recognize that trends in federal caselaw have tended to narrow the availability of class actions. These developments have been thoroughly catalogued by Dean Robert Klonoff. *See* Robert H. Klonoff, *The Decline of Class Actions,* 90 Wash. U. L. Rev. 729, 731 (2013) (outlining generally the trend in courts historically to limit the ability of plaintiffs to bring class actions). *But see* Robert H. Klonoff, *Class Actions Part II: A Respite from the Decline,* 92 N.Y.U. L. Rev. 971, 971 (2017) (finding more recently, however, that the Supreme Court and federal circuit courts have begun to relax their previously harsher stance towards plaintiffs bringing class actions). As Arthur Miller, who was there at the creation of Federal Rule 23, has observed, "[T]he Supreme Court and several courts of appeals have rendered decisions that oblige district courts to require 'rigorous' adherence to each of the Rule 23 prerequisites," which some would say demonstrates a tendency of federal courts to go "out of their way to intensify [the class-action requirements] and create new ones." Arthur R. Miller, *The Preservation and Rejuvenation of Aggregate Litigation: A Systemic Imperative,* 64 Emory L.J. 293, 296 & n.15 (2014). We are by no means bound to accept the departure of federal courts from earlier class-action precedent unless we deliberately choose to do so based upon our independent analysis of law.

**B. Specific Provisions of Iowa Class-Actions Rules.** The Iowa class-actions rules are presented in Iowa Rules of Civil Procedure 1.261–.279. The three general requirements are under Iowa Rule of Civil Procedure 1.261 and rule 1.262. Rule 1.261(1) provides that a class action is appropriate if "[t]he class is so numerous or so constituted that joinder

of all members . . . is impracticable." Iowa R. Civ. P. 1.261(1). Rule 1.261(2) requires the presence of "a question of law or fact common to the class." *Id.* r. 1.261(2). Notably, rule 1.261(2) does not require that common questions of law or fact predominate, but only that they are present.

Rule 1.262(2) allows the district court to certify a class action if it finds that (a) both the provisions of rule 1.261 have been met, (b) "[a] class action should be permitted for the fair and efficient adjudication of the controversy[,]" and (c) "[t]he representative parties fairly and adequately will protect the interests of the class." *Id.* r. 1.262(2)(*a*)–(*c*).

Rule 1.263 provides criteria for the district court to use "[i]n determining whether the class action should be permitted for the fair and efficient adjudication of the controversy." *Id.* r. 1.263. The district court is directed to "consider and give appropriate weight" to the thirteen listed factors[8] and "other relevant factors." *Id.* The rule does not provide that any of the thirteen factors are entitled to more or less weight.

---

[8]Under rule 1.263, the court spells out in greater detail the specifically enumerated criteria, which are

   *a.* Whether a joint or common interest exists among members of the class.

   *b.* Whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class.

   *c.* Whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

   *d.* Whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

**C. Caselaw Under Iowa Class-Actions Rules.** We have repeatedly stated that "our class-action rules are remedial in nature and should be liberally construed to favor the maintenance of class actions." *Anderson Contracting, Inc. v. DSM Copolymers, Inc.*, 776 N.W.2d 846, 848 (Iowa 2009) (quoting *Comes*, 696 N.W.2d at 320).

In this case, Annett Holding claims the Iowa Rule of Civil Procedure 1.262(2)(*b*) requirement that the action will promote "fair and efficient" administration of justice is not present in this case. The rule directs the district court to consider thirteen criteria in determining whether a class action will promote the fair and efficient administration of justice. In determining what weight to assign to the thirteen criteria, the trial court is vested with wide discretion in assessing what weight, if any, is to be

---

 *e.* Whether common questions of law or fact predominate over any questions affecting only individual members.

 *f.* Whether other means of adjudicating the claims and defenses are impracticable or inefficient.

 *g.* Whether a class action offers the most appropriate means of adjudicating the claims and defenses.

 *h.* Whether members who are not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions.

 *i.* Whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding.

 *j.* Whether it is desirable to bring the class action in another forum.

 *k.* Whether management of the class action poses unusual difficulties.

 *l.* Whether any conflict of laws issues involved pose unusual difficulties.

 *m.* Whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.

Iowa R. Civ. P. 1.263(1)(*a*)–(*m*).

afforded class-certification criteria. *Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 367 (Iowa 1989).

There is no preordained hierarchy in the factors; the district court is charged with determining "what weight, if any, to give to each of the listed factors." *Anderson Contracting, Inc.*, 776 N.W.2d at 848–49. Rule 1.263 "does not require any particular factor be weighted more heavily than any other." *Id.* at 851. Even if a number of factors weigh against certification, "that does not preclude the [district] court from certifying the class if, in its opinion, those factors are outweighed by other factors supporting certification." *Comes*, 696 N.W.2d at 322 (quoting *Howe v. Microsoft Corp.*, 656 N.W.2d 285, 289 (N.D. 2003)). Further, the district court is not required to assign weight to any of the criteria listed or to make written findings as to each factor. *Vos*, 667 N.W.2d at 45.

With respect to one of the thirteen criteria, predominance of common issues, the question is "fairly complex." *Vignaroli*, 360 N.W.2d at 744. We have characterized the inquiry as qualitative, not quantitative. *Freeman*, 895 N.W.2d at 118. In *Comes*, we specifically rejected a contention that this criteria was a prerequisite for class certification, noting that it was only one of thirteen criteria to be considered. 696 N.W.2d at 322. We have stated that

> [w]hen common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than an individual basis.

*Luttenegger v. Conseco Fin. Servicing Corp.*, 671 N.W.2d 425, 437 (Iowa 2003) (emphasis omitted) (quoting 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1778, at 528–33 (1986)). The claim that a course of conduct amounted to a statutory violation is clearly a legal question,

which is a classic issue that is considered common to the class. *Martin*, 435 N.W.2d at 368.

In evaluating whether to certify the class, it is not necessary that each plaintiff be a "carbon copies" of each other. *Vignaroli*, 360 N.W.2d at 745. Further, "the fact that a potential class action involves individual damages does not preclude certification when liability issues are common to the class." *Id.*

Further, it is not necessary that every class member have suffered actual injury from the alleged illegal conduct. We addressed that question in *Martin*, 435 N.W.2d 364. In *Martin*, the plaintiff claimed Amana sold furnaces and water heaters with certain defects that amounted to a breach of warranty. *Id.* at 365. Amana sought to defeat decertification on the ground that many members of the class did not experience actual injury and that, as a result, at least half of the members of the class had no cognizable claim. *Id.* at 367–38.

We rejected Amana's argument. We declared that Amana's focus "is misplaced for a class-action certification proceeding. The appropriate inquiry is not the strength of each class member's personal claim, but rather, whether they, as a class have common complaints." *Id.* at 367.

In giving the trial court broad discretion in class certification, we have noted that "a safety net is provided for cases in which certification is improvidently granted; the court may decertify the class at a later time." *Comes*, 696 N.W.2d at 324. If and when a district court elects to decertify the class at a later time, that decision, like the original decision to certify, is then subject to review only for an abuse of discretion. *Vos*, 667 N.W.2d at 54–55.

In addition, the district court may consider bifurcating the issues of liability and damages. *See Hammer v. Branstad,* 463 N.W.2d 86, 88 (Iowa 1990). As we have noted,

> If defendant's activities present a "common course of conduct" so that the issue of statutory liability is common to the class, the fact that damages . . . may vary for each party does not require that the class action be terminated.

*Legg v. W. Bank,* 873 N.W.2d 756, 759–60 (Iowa 2016) (quoting *Luttenegger,* 671 N.W.2d at 437). As we have previously stated, "Reversal is appropriate only when the record reveals that the court's decision was based on clearly untenable or unreasonable grounds." *City of Dubuque v. Iowa Tr.,* 519 N.W.2d 786, 791 (Iowa 1994); *see also Anderson Contracting Inc.,* 776 N.W.2d at 848. In considering whether there is clearly an abuse, we must recognize the availability of decertification as the case develops and the possibility of bifurcation of damages and liability issues. We have characterized the initial burden on a proponent of a class action as "light." *City of Dubuque,* 519 N.W.2d at 791.

### III. Iowa Workers' Compensation Act Related to Medical Care of Injured Employees.

Iowa Code chapter 85 establishes a workers' compensation program in Iowa. *See* Iowa Code ch. 85 (2017). Chapter 85 generally provides that workers injured on the job are entitled to workers' compensation benefits. *See id.* § 85.3. In addition to establishing benefits, chapter 85 provides a procedure for administering workers' compensation claims. *See id.* ch. 85. In order to fund potential liabilities, chapter 85 provides that employers must either adequately self-insure or obtain workers' compensation insurance. *Id.* § 85.3.

Iowa Code section 85.27(4) provides that the employer is obligated "to furnish reasonable services and supplies to treat an injured employee."

The treatment "must be offered promptly and be reasonably suited to treat the injury without undue inconvenience to the employee." *Id.* An employee dissatisfied with the care may file a petition for alternate care and have the matter decided in a contested case hearing. *Id.* The workers' compensation commissioner is required to issue a decision within ten working days of the hearing. *Id.*

Iowa Code section 85.18 relates to contracts to relieve the employer of its statutory obligations. It provides that "[n]o contract, rule, or device whatsoever shall operate to relive the employer, in whole or in part, from any liability created by this chapter except as herein provided." *Id.* § 85.18.

**IV.  Discussion.**

**A.  Class-Action Certification.**  In light of the above, I now turn to consideration of whether the district court clearly acted unreasonably in this case and thus, whether class certification amounted to an abuse of discretion. I find no such abuse.

First, it is clear that there are two common issues in this case. The plaintiff here attacks the MOU on its face as a violation of Iowa Code sections 85.18 and 85.27. In other words, the plaintiff's class seeks a judicial determination that, in no setting—none whatsoever—may the MOU be used by Annett Holdings to preempt or otherwise dilute rights under chapter 85. The plaintiff's theory is that as a result of Iowa Code section 85.18, Annett Holdings cannot lawfully attempt to force an employee to waive those rights under Iowa Code section 85.27, ever, under any circumstances, period. This is a facial challenge on the legal validly of the MOU as much as the warranty claim in *Martin* presented a theory that affected all members of the class. *See Martin*, 435 N.W. 2d at 368; *see also DL v. District of Columbia,* 713 F.3d 120, 131 (D.C. Cir. 2013)

(Edwards, J., concurring) ("An illegal policy or practice affecting all class members would provide the "glue" necessary to litigate otherwise individual claims as a class."); *Brinker Rest. Corp. v. Super. Ct.*, 273 P.3d 513, 531 (Cal. 2012) ("Claims alleging that a uniform policy consistently applied to a group of [plaintiffs] is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."). The observation of the court of appeals that the lawfulness of the MOU was "the elephant in the room" is apt.

In addition, the plaintiff presents a bad-faith theory that is common to all class members. The bad-faith theory is that, in light of the clear language of Iowa Code section 85.18, there was no reasonable basis for Annett Holdings to believe it could force employees to sign the MOU as a term and condition of employment. This claim would be proved by generalized evidence: no particularized showing is required. The bad-faith issue is another common issues affecting class members.

Second, the test for predominance is a pragmatic one. The issues characterized as predominant need not, of course, be dispositive. *Luttenegger*, 671 N.W.2d at 437. The legal issues in this case are predominant in that they are the centerpiece of the litigation. As the court of appeals characterized it, the legal validity of the MOU is "the elephant in the room." *Roland*, 2019 WL 3317353, at *6.

Third, it may be true that individual members of the class who were forced to sign the allegedly unlawful MOU and suffered workplace injuries did not suffer actual damages. But that point was raised and rejected as a basis for refusing to certify a class in *Martin*. 435 N.W.2d at 367–68. I would reject it here as well.

Fourth, the fact that there may be a need for individualized determination of damages is not decisive. The better view is that

individualized damages does not defeat class certification. *See Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514–16 (9th Cir. 2013); *Brinker Rest. Corp.*, 273 P.3d at 546 ("Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device." (quoting *B.W.I. Custom Kitchen v. Owens–Ill., Inc.*, 235 Cal. Rptr. 228, 236 (Cal. Ct. App. 1987))). This is particularly true in an "upstream" case like this where "the harm is alleged to be some uniform course of conduct by the defendant, from which everything else follows." Samuel Issacharoff, *Class Action Conflicts*, 30 U.C. Davis L. Rev. 805, 831–32 (1997).

Fifth, we are at a very early stage of this litigation. It may well be as the litigation proceeds that the district court will come to a different conclusion on the issue of class certification. It is possible that discovery will lead to further class definition. Further, it may be desirable to bifurcate the trial on the merits from the damages issues. *See Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1269 (Fla. 2006) (permitting class members "to initiate individual damages actions" with findings made during trial of liability issues to have res judicata effect). Or, it may be that a claims process of some kind needs to be established. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2010 WL 2756947, at *3 (N.D. Ohio July 12, 2010) ("[T]he presence of a single common question is enough for certification—as long as resolution of that question will advance the litigation."), *aff'd*, 678 F.3d 409 (6th Cir. 2012), *judgment vacated and remanded sub nom. Whirlpool Corp. v. Glazer*, 569 U.S. 901, 133 S. Ct. 1722, *aff'd*, 722 F.3d 838 (6th Cir. 2013), *and modified in part*, 302 F.R.D. 448 (N.D. Ohio 2014); *Ouellette v. Wal-Mart Stores, Inc.*, 888 So. 2d 90, 91 (Fla. Dist. Ct. App. 2004) (cataloguing possible approaches to management of claims but

emphasizing that "the individual nature of damages claims should not bar certification of the class"). These issues, however, are premature and not before the court today.

Sixth, we largely defer to the district court in balancing the thirteen factors under Iowa Rule of Civil Procedure 1.263. Our caselaw expects our district courts to be managers of class-action litigation with minimal interference on appeal. Given the above discussion, the district court's class certification cannot be fairly characterized as unreasonable. Among the thirteen factors, the district court found in a thoughtful ten-page analysis that there was a joint or common interest among class members, consistent with the requirements of rule 1.263(1)(*a*); the prosecution of separate actions threatened inconsistent or varying adjudications that would establish incompatible standards, consistent with the requirements of rule 1.263(1)(*b*); common questions of law or fact predominate over any questions affecting only individual interests, consistent with the requirements of rule 1.263(1)(*e*); and a class action offers the most appropriate means to decide the issues, consistent with the requirements of rule 1.263(1)(*g*). The district court found that the remaining factors are of little relevance to the case. In my view, there is no basis for extraordinary, and indeed, unprecedented, appellate court intervention in this case.

**B.  Exhaustion of Administrative Remedies.**  The majority injects an issue not raised by the parties, namely, whether the class should not be certified because members of the class must exhaust administrative remedies under Iowa Code chapter 85. This argument was not presented to the district court or to this court on appeal.

The majority suggests that the question of exhaustion of administrative remedies raises a question of subject matter jurisdiction. If

so, the parties could not waive the issue, and it could be raised by this court sua sponte.

The majority is wrong, however, when it declares that the failure to exhaust administrative remedies raises an issue of subject matter jurisdiction. Instead, it gives rise to a question of authority to resolve the case. The key case in that regard is *Keokuk County v. H.B.*, 593 N.W.2d 118, 122 (Iowa 1999). There, we distinguished between subject matter jurisdiction and authority to decide the case. *Id.* We declared that the failure to exhaust administrative remedies gives rise not to a problem of subject matter jurisdiction but authority to decide the case. *Id.* Unlike questions of subject matter jurisdiction, a party can waive the question of authority to decide the case. *Id.*; *see also Alliant Energy-Interstate Power & Light Co. v. Duckett*, 732 N.W.2d 869, 874–75 (Iowa 2007).

The majority cites *Kloster v. Hormel Foods Corp.*, 612 N.W.2d 772, 775 (Iowa 2000), in support of its position that failure to exhaust administrative remedies in the context of chapter 85 claims raises a question of subject matter jurisdiction. The case does not say that. Consistent with *Keokuk County*, the case states that where an employer asserts that an employee seeking to press a claim under chapter 85 fails to exhaust administrative remedies, the district court "lacked authority to entertain the action." *Id.* at 775.

The issue of failure to exhaust administrative remedies has not been asserted in this appeal. As a result, the question is not before us. Further, as correctly noted by the majority, the question of exhaustion of administrative remedies would have no impact on the bad-faith claim. In any event, I think the proper approach on appeal is not to consider the issue not raised in an appellate brief by either party.

### V.  Conclusion.

For the above reasons, I would affirm the order of the district court on class certification.